THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

| | |
|---|---|
| BANCO DO BRASIL, S.A.<br>    Plaintiff,<br><br>v.<br><br>275 WASHINGTON STREET CORP.,<br>as it is the Trustee of the WASHINGTON<br>STREET REALTY TRUST II,<br>    Defendant. | Civil Action No. |

## VERIFIED COMPLAINT

### Introduction

Plaintiff Banco do Brasil, S.A. ("Banco do Brasil," the "Bank" or "Tenant"), brings this action so that this Court may declare the parties' rights and obligations under a Lease dated August 29, 2008 for 4,742 square feet of retail space on the first floor of a building located at 227 – 275 Washington Street, Boston, Massachusetts (the "Lease" and the "Premises," respectively). Defendant Washington Street Realty Trust II ("Landlord") asserts that Banco do Brasil is in default of the Lease, even though Banco do Brasil has fully and completely paid all rent due to the Landlord and even though the termination of Banco do Brasil's rights under the Lease would, in any event, work a substantial financial forfeiture upon the Bank, which forfeiture this Court, in equity, should not countenance.

## THE PARTIES

1. Plaintiff Banco do Brasil is a Brazilian corporation with a principal place of business in Brazil and has no offices or branches in Massachusetts. Banco do Brasil is also a foreign entity as it is an instrumentality of the Brazilian government.

2. Defendant 275 Washington Street Corp. is sued in its capacity as the Trustee of the Washington Street Realty Trust II, a Massachusetts realty trust formed under Declaration of Trust dated October 30, 1986 (which is recorded with the Suffolk County Registry of Deeds in Book 13023, Page 258, as amended). Both the corporation and the trust have their principal place of business at 275 Washington Street, Boston, Massachusetts 02108.

## JURISDICTION

3. Subject matter jurisdiction of this Court arises under the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201-2202, et. seq., and this Court's diversity jurisdiction pursuant to 28 U.S.C. §1332 (a)(2),(4), 28 U.S.C. §1330(a) and 28 U.S.C. §1603(a), (b) . See Mendes Junior Int'l Co. v. Banco Do Brasil, S.A., 15 F. Supp. 2d 332, 334 (S.D.N.Y. 1998).

4. Plaintiff seeks a declaration: (a) that the Lease remains in full force and effect; (b) that the Landlord's purported notice of lease default and termination is invalid and of no force or effect; and (c) that the Landlord's July 16, 2009 letter and the Bank's July 21, 2009 payment of the July rent would not, in any way, bar the Bank's exercise of its option to terminate the Lease pursuant to the terms of Section 6.5 of the Lease.

5. Landlord asserts that the Lease has been terminated and that the Bank is obligated, pursuant to Section 18.3 of the Lease, to pay to the Landlord, monthly, a sum equal to or in excess of $39,516.67 (to be determined pursuant to the Lease) for the remaining 117 months of the Lease term, rather than the $530,650.03 early Termination Payment which the

812215                                                          2

Bank would owe if the Bank is permitted to exercise its early termination option. See Paragraph 7, below. Thus, the amount in controversy in this action clearly exceeds $75,000.00.

## THE LEASE

6. On or about August 29, 2008, Banco do Brasil leased, from Washington Street Realty Trust II, 4,742 square feet of first floor space at 227-275 Washington Street in Boston, Suffolk County, Massachusetts. A true, complete and correct copy of said Lease is attached hereto as Exhibit A.

7. Because it was necessary for Banco do Brasil to obtain approval, from each of the Federal Deposit Insurance Corporation, the Federal Reserve System and the United States Treasury Office of Thrift Supervision, to operate a branch bank in the demised premises as a federal savings bank ("Regulatory Approval")(See Section 3.2 of the Lease) and because it was not certain that said Regulatory Approval could be obtained within a reasonable time, the Lease provided, at Section 6.5, that if such Regulatory Approval was not obtained within one year from the date of the Lease (i.e., on or before August 29, 2009) then Landlord and Tenant each would have the right to elect to terminate the Lease by notice given to the other within sixty days after the end of said one year period (i.e., on or before October 28, 2009). Section 6.5 also sets forth a formula to be used to calculate the amount which Tenant would pay to Landlord upon such early termination (the "Termination Payment"), which Termination Payment would, if Tenant or Landlord terminated the Lease, be $530,650.03. This right, the amount to be paid by Banco do Brasil, and the mutual right to exercise this right was, pursuant to negotiation between Landlord and Banco do Brasil, incorporated in Section 6.5 of the Lease.

8. Section 6.5 provided that, should the Landlord or Tenant give notice of termination, the Lease would be "canceled and void effective as of the end of the calendar

month containing the day that is sixty days after the date of giving such notice, **all as if this Lease never had been executed, and thereupon there should be no further liability or obligation upon either party hereto....**" (Emphasis added).

9. Section 6.5 contains no requirement that the Tenant not be in default of its Lease obligations in order that the Tenant be permitted to exercise its termination option under Section 6.5.

10. Pursuant to Section 3.2, the Lease term could begin on one of a number of different days, depending upon whether and when Banco do Brasil obtained Regulatory Approval or first opened for business in the Premises.

11. Because Banco do Brasil neither obtained Regulatory Approval, nor opened for business in the Premises, the Leasehold term commenced on June 1, 2009. See Lease Section 3.2.

12. Under the Lease, if rent is not paid when due, the Bank must cure such non-payment within three business days of receiving notice or demand from Landlord. See Lease Section 4.1 and Section 18.1.

13. In the event that Tenant defaults on any of its Leasehold obligations, as such defaults are defined by Section 18.1, then Landlord may terminate the Lease either by entering and ejecting the Tenant from the Premises or by sending written notice to the Tenant terminating the Lease. See Lease Section 18.2. Such termination would only be effective "upon the first to occur of: (1) entry as aforesaid; or (2) the fifth (5th) day following mailing of such notice of termination...." Id.

14. Section 19.15 of the Lease requires that all notices given by Landlord to the Bank - - including notices of default and/or termination - - are required to be sent to the Bank both via

registered, certified or overnight mail and by email to the email addresses set forth in Section 19.15.

15. Section 18.7 of the Lease states that: "Nothing in this lease shall limit any right that the Tenant might otherwise have to obtain injunctive relief against the landlord in equity;..."

## Additional Facts

16. Banco do Brasil paid the first month's (June 2009's) rent in 2008 when it executed the Lease. Therefore, the first rental payment (for the July 2009 rent) to be made "out-of-pocket" by Banco do Brasil (the "Rent Payment") was due on or before July 1, 2009. See Lease Section 4.1.

17. Banco do Brasil did not make the Rent Payment on or about July 1, 2009.

18. Banco do Brasil's failure to make the Rent Payment under the Lease in a timely fashion was the inadvertent result of a clerical error by Banco do Brasil.

19. Banco do Brasil first became aware that the Rent Payment was late when it received, on July 17, 2009, a letter from the Landlord's counsel dated July 16, 2009 sent by overnight courier, claiming that the Lease was in default and had been terminated. A true and correct copy of said letter is attached hereto as Exhibit B.

20. The Landlord's July 16, 2009 notice of default and termination was not sent to the Bank or the Bank's attorney at the email addresses specified in Section 19.15 of the Lease.

21. Upon its receipt of a copy of the Landlord's counsel's July 16, 2009 letter, Banco do Brasil promptly arranged for the Landlord to receive, from Banco do Brasil, within three business days, the Rent Payment for July 2009.

22. In fact, the Landlord received the Rent Payment on July 21, 2009, the second business day after Banco do Brasil's receipt of the Landlord's July 16, 2009 letter. See copy of check and Federal Express delivery receipt, true and correct copies of which are attached hereto as Exhibit C.

23. On July 20, 2009, the Bank, through its attorney, wrote to the Landlord and explained that the Bank's failure to make the rental payment in a timely fashion was inadvertent. A true, complete and correct copy of said letter is attached hereto as Exhibit D.

24. The Bank's attorney also explained that, in order to avoid any disagreement with the Landlord, the Bank would pay the full amount demanded in the Landlord's default notice. The Bank's attorney explained to the Landlord's attorney that, pursuant to the Lease, the Bank was not in default and that the Lease could not, therefore, be terminated.

25. The Bank's attorney further explained that any attempt by the Landlord to use the inadvertent late payment of the July Rent Payment as a pretext for seeking to block or refuse the Bank's right to terminate the Lease early, pursuant to Section 6.5, would be inappropriate and legally unfounded, particularly where, as here, the Bank had previously given the Landlord advance notice, to assist the Landlord's planning purposes, that the Bank would be exercising the Lease's early termination provision at the end of August, 2009 and making the early Termination Payment specified in the Lease.

26. Advance notice of the Bank's intention to terminate the Lease was given to the Landlord at a May 27, 2009 meeting held at the Bank's New York office at which Craig Harwood, Brett Harwood, Myron Berman and Landlord's counsel, Mike Hammer, Esq., participated on the Landlord's behalf. The purpose of the meeting was for the Bank to inform the Landlord that the Bank had learned that it would not receive Regulatory Approval by

August 29, 2009 and that it was the Bank's intention to make the Termination Payment and terminate the Lease at that time pursuant to Section 3.2.

27. The Landlord responded to the Bank's letter and payment on or about July 28, 2009. The response came from an attorney other than Mike Hammer, the attorney who had negotiated the Lease on behalf of the Landlord and sent the July 16, 2009 letter. In fact, the law firm of the attorney who sent the July 28, 2009 response is known for civil litigation, not real estate leasing. A true, complete and correct copy of said letter is attached hereto as Exhibit E.

28. In his July 28, 2009 letter, Landlord's litigation counsel maintained that the Lease had been terminated and that the payment made by the Bank on account of the July rent would be accepted only on account of the Bank's alleged post-termination obligations. Id.

29. The Landlord's litigation counsel also notified the Bank of the Landlord's election that the Bank (if the lease was effectively terminated) continue to make monthly payments pursuant to Section 18.3 of the Lease, rather than for the Bank to pay over to the Landlord the excess value of the Lease over the current rental value of the Premises. See Id. and Lease Section 18.3.

30. On July 31, 2009, the Landlord received from the Bank the amount owed under the Lease for the August 2009 rent. See copy of check and Federal Express delivery receipt, true and correct copies of which are attached hereto as Exhibit F.

31. By return mail, the Landlord notified the Bank that it was maintaining its (the Landlord's) position that the Lease has been terminated and that the payment made by the Bank was being accepted only on account of the post-termination obligations of the Bank pursuant to Section 18.3. See August 4, 2009 letter from Landlord's counsel, a true, complete and correct copy of which is attached hereto as Exhibit G.

32. Unlike the Landlord's July 16, 2009 notice of default and termination, the August 4, 2009 letter was sent by Landlord's counsel to the Bank and the Bank's attorney at the email addresses specified in Section 19.15 of the Lease, as well as by Federal Express overnight delivery.

33. The Bank has never occupied the Premises.

## COUNT I
### (Declaratory Judgment)

34. Plaintiff repeats and incorporates herein, by reference, as if fully set forth herein, the allegations of Paragraphs 1 through 33, above.

35. A dispute has arisen between Banco do Brasil and Landlord concerning whether the Lease, pursuant to it terms, remains in force and effect.

36. A dispute has also arisen between Banco do Brasil and Landlord concerning: (a) whether Banco do Brasil has breached it obligations under the Lease; (b) as to the effect of Banco do Brasil's July 21, 2009 payment (within three (3) business days of the Bank's receipt of notice from the Landlord and prior to the termination of the Lease pursuant to Section 18.2) to the Landlord; and (c) as to whether the Lease, in equity, may be terminated.

37. It is Banco do Brasil's contention that the July 21, 2009 payment cured its inadvertent failure to make the Rent Payment for July when due.

38. Banco do Brasil further contends, in equity, that the Landlord has not been prejudiced by Banco do Brasil's July 21, 2009 payment and that this Court ought to declare that the Lease remains in full force and effect.

39. Finally, Banco do Brasil and the Landlord disagree as to whether, in light of the Landlord's letter of July 16, 2009 and the Landlord's July 21, 2009 receipt of the July 2009

Rent Payment, Banco do Brasil may exercise its right, pursuant to Section 6.5 of the Lease, to terminate the Lease within sixty (60) days after August 29, 2009.

40. By reason of the foregoing, Banco do Brasil is entitled to a declaration: (a) that the Lease remains in full force and effect; (b) that the Landlord's purported notice of lease termination is invalid and of no force or effect; and (c) that the Landlord's July 16, 2009 letter is not, in light of the Landlord's July 21, 2009 receipt of the July 2009 Rent Payment, a bar to the Bank's exercise of its option to terminate the Lease pursuant to the terms of Section 6.5.

## **PRAYERS FOR RELIEF**

WHEREFORE, Banco do Brasil, S.A. respectfully requests that this Court:

i. Issue a declaration:

   (a) that the Lease remains in full force and effect;

   (b) that the Landlord's purported notice of lease termination is invalid and of no force or effect; and

   (c) that the Landlord's July 16, 2009 letter is not, in light of the Bank's July 21, 2009 payment of the July rent, a bar to the Bank's exercise of its option to terminate the Lease pursuant to the terms of Section 6.5.;

ii. Award the Bank its reasonable attorney's fees incurred in order to obtain said declaration; and

iii.     Issue such other and further relief as the evidence and justice require.

BANCO DO BRASIL, S.A.

By its attorneys,

_____
Eric F. Eisenberg (BBO 544682)
Hinckley, Allen & Snyder LLP
28 State Street
Boston, Massachusetts 02109
(617) 345-9000

DATED: August 10, 2009

Of Counsel:

Peter D. Aufrichtig, Esq.
McCarthy Fingar LLP
11 Martine Avenue, 12th Floor
White Plains, NY 10606-1934
(914)-385-1063

VERIFICATION

I, Milton Rodriguez, Jr., Project Manager for Banco do Brasil, S.A., hereby certify, under the penalties of perjury: (a) that I have read the foregoing Verified Complaint; and (b) that the allegations contained in the Verified Complaint are true and accurate based upon my personal knowledge, except such allegations as are made upon information and belief, which allegations I believe to be true.

_____