UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BANCO DO BRASIL, S.A., <br><br> Plaintiff <br><br> v. <br><br> 275 WASHINGTON STREET CORP., as it is the Trustee of the WASHINGTON STREET REALTY TRUST II, <br><br> Defendant | CIVIL ACTION NO. 09-11343-NMG |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION OF PRIVILEGED DOCUMENTS BASED ON PLAINTIFF'S WAIVER OF ANY APPLICABLE PRIVILEGE**

Defendant 275 Washington Street Corp., as Trustee of the Washington Street Realty Trust II (the "Trust"), submits this memorandum of law in support of its motion to compel the production of a limited category of documents that plaintiff claims are protected from disclosure by the attorney-client privilege and/or work product doctrine. As set forth below in more detail, the Trust is entitled to communications between plaintiff Banco do Brasil, S.A. (the "Bank") and its attorney, Kathleen Scott, concerning the Bank's efforts to obtain regulatory approval because the Bank has introduced Attorney Scott's role in that process and her communications with the Bank as issues in this case, thereby waiving any applicable attorney-client privilege.[1]

---

[1] When the Bank's privilege log was produced, the Bank had not completed its document production; instead, it had decided to produce documents on a rolling basis. Because the Bank still has not completed its document production, the Trust recently filed a motion to extend the fact discovery schedule for a six-month period, which motion is pending with the Court. A high percentage of the documents that the Bank has recently produced are in Portuguese. Allowance of this motion would streamline discovery by obviating or, at the very least, facilitating the Trust's ability to review and analyze these Portuguese documents.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 10, 2009, the Bank filed the instant action requesting that this Court declare the parties' rights and obligations under a Lease dated August 29, 2008 (the "Lease") entered into between the parties. In its Counterclaim, The Trust asserted, among other things, that the Bank breached the implied covenant of good faith and fair dealing contained in the Lease by failing to use good-faith efforts to secure the Regulatory Approval as described in the Lease. Counterclaim, ¶ 40. To defend against this claim and in support of its motion for summary judgment, the Bank submitted the Affidavit of Kathleen A. Scott ("Scott Aff."), an attorney who represented the Bank in its effort to obtain regulatory approval from a variety of U.S. federal regulatory agencies. A copy of the Scott Aff. is attached hereto as Exhibit A. In her affidavit, Attorney Scott provided her opinions concerning the process involved in obtaining regulatory approval. Specifically, Attorney Scott opined as follows:

- Pursuant to the International Banking Act, the Federal Reserve System must approve the plaintiff to own a U.S. federal savings bank. *Id.*, ¶ 11.

- Pursuant to the Home Owners Loan Act, the Office of Thrift Supervision must approve the establishment of the Bank and approve the Bank's control parties as savings and loan holding companies. *Id.*, ¶ 12.

- Pursuant to the Federal Deposit Insurance Act, the FDIC must approve the Bank's application for deposit insurance for a federal savings bank. *Id.*, ¶ 13.

- "In my opinion, Banco do Brasil made every reasonable effort in diligently working to obtain the required regulatory approvals in order to

open the [Federal Savings Bank]." *Id.*, ¶ 32.

Not only did the Bank insert Attorney Scott's opinions concerning the regulatory approval process into this case, it also introduced her interactions and dealings with the Bank's personnel. Specifically, Attorney Scott stated in her affidavit that "I worked intensively for over 18 months with many Banco do Brasil personnel to obtain the required regulatory approvals for Banco do Brasil in order to open the FSB." *Id.*, ¶ 31. Further, the Bank in its summary judgment papers, relying on the Scott Aff., argued to this Court that it "made more than reasonable efforts to obtain regulatory approval" and "spent more than a year and a half diligently pursuing regulatory approvals." Memorandum in Support of Summary Judgment, p. 23, Docket No. 15.

On October 1, 2010, the Trust served document requests seeking, among other things, all documents concerning the Bank's efforts to secure Regulatory Approval. *See* the Trust's Revised First Requests for Production of Documents, Request No. 1, which is attached hereto as Exhibit B. On December 10, 2010, the Bank served its responses and objections to the Trust's document requests, a copy of which is attached hereto as Exhibit C. Among other things, the Bank objected to the Trust's requests on grounds that they sought documents protected from disclosure by the attorney-client privilege and/or work product doctrine. On March 14, 2011, the Bank served its privilege log, a copy of which is attached hereto as Exhibit D. Even a cursory review of this privilege log reveals that the Bank refused to produce numerous communications between Attorney Scott and the Bank concerning the Bank's efforts to secure regulatory approval.

Because the Bank voluntarily elected to introduce Attorney Scott's role in the regulatory approval process and her interaction with Bank personnel into this case, the

Bank cannot, at that same time, refuse to produce documents concerning communications between the Bank and Attorney Scott. Indeed, any applicable attorney-client privilege has been waived by the Bank's decision to file Attorney Scott's Affidavit to support its position that it did not breach the implied covenant of good faith and fair dealing contained in the Lease.

## ARGUMENT

### I. Applicable Standard

Massachusetts recognizes that a party may waive the attorney-client privilege by "injecting certain claims or defenses into a case." *Darius v. City of Boston*, 433 Mass. 274, 277 (2001). *See also F.D.I.C. v. R.W. Beck, Inc.*, 2004 WL 1474579 at *1 (D. Mass. 2004) ("It is settled law that by placing privileged communications or attorney work product 'at issue' in civil litigation, a party waives any applicable claim of privilege where nondisclosure would cause manifest unfairness to the opposing party."). The privilege is waived concerning the issues that have been inserted into the case if "it is shown that the privileged information sought to be discovered is not available from any other source." *Darius*, 433 Mass. at 283-84. As the First Circuit has articulated: "[p]articularly in a civil case, a privileged party cannot fairly be permitted to disclose as much as he pleases and then to withhold the remainder to the detriment of the defendant." *Greater Newburyport Clamshell Alliance v. Public Service Co. of New Hampshire*, 838 F.2d 13, 20 (1st Cir. 1988).

### II. Because the Bank Inserted Attorney Scott's Role in the Regulatory Approval Process Into this Case, It Has Waived Any Applicable Privilege Concerning Communications Between the Bank and Attorney Scott Regarding that Process.

To defend against the Trust's claim that the Bank violated the implied covenant of

4

good faith and fair dealing contained in the Lease, the Bank submitted the Affidavit of Kathleen Scott, the Bank's attorney. By voluntarily making the tactical decision to insert Attorney Scott's role in the regulatory approval process and her interactions with the Bank's management and employees into this case, the Bank cannot -- at the same time -- withhold documents evidencing communications between the Bank and Attorney Scott concerning that process. Indeed, these communications are central to the Trust's position that the Bank failed to use good faith efforts to obtain the necessary regulatory approvals. *See McLaughlin v. Lunde Truck Sales, Inc.*, 714 F. Supp. 916, 920 (N.D. Ill. 1989) ("defendants have waived their attorney/client privilege through the assertion of their affirmative defense of 'good faith reliance' and Attorney Williams' affidavit").

In *McLaughlin*, defendants submitted the affidavit of attorney Daniel Williams to support their defense that they relied in good faith on the opinion of the Department of Labor in connection with unfair wage claims. *Id.* at 917. After receiving a copy of this affidavit, Plaintiff requested that the defendants produce communications between the defendants and attorney Williams arguing that -- by submitting Attorney Williams' Affidavit -- defendants improperly revealed certain information from their attorney that was favorable to their defense but shielded unfavorable information under the guise of the attorney-client privilege. *Id.* at 918. The Court denied defendants' motion to quash holding:

> By voluntarily using their counsel's affidavit as proof of their good faith, the defendants imply that their interpretations of DOL actions are reflected in their counsel's interpretation and understanding of DOL actions. More importantly, the defendants are attempting to control which of their counsel's interpretations are discoverable . . . This result would grant a large advantage to the defendants and warrants, in the interest of equity, the waiver of the defendants' attorney/client privilege . . .

*Id.* at 919-920. Similarly, here, the Bank cannot submit the Affidavit of Attorney Scott to support its position that it made reasonable efforts to secure regulatory approval and, at the same time, refuse to disclose communications between the Bank and Attorney Scott regarding that process. *Id.; see also Computer Network Corp. v. Spohler*, 95 F.R.D. 500, 502 (D.D.C. 1982) (holding that "[a] party cannot voluntarily disclose facts in his favor before a judicial tribunal, when they are helpful to his cause, and then invoke the attorney-client privilege as a shield to protect a searching inquiry so that a court may determine the truthfulness of the facts initially presented"); *Henry v. Quicken Loans, Inc.*, 263 F.R.D. 458, 470 (E.D. Mich. 2008) ("Once the defendant has relied (even in small part) on privileged communications to make its case, fairness requires that the privilege be put aside in order for the plaintiff to test the defendant's contentions.").

Attorney Scott submitted an affidavit claiming that she "worked intensively for over 18 months with many Banco do Brasil personnel to obtain the required regulatory approvals" but the Bank has refused to produce any documents substantiating her statement claiming that such communications are protected from disclosure by the attorney-client privilege. Because the Bank has waived any applicable privilege concerning Attorney Scott's communications with the Bank regarding the regulatory approval process, the Bank should not be allowed to withhold responsive documents. In sum, because the Bank injected Attorney Scott's interactions with the Bank's personnel into this case, it would be manifestly unjust and prejudicial not to allow the Trust to review Attorney Scott's communications with the Bank in order to challenge and contest the statements in her affidavit.

### III. The Trust Cannot Obtain the Requested Documents From Any Other Source

There is no alternative source for the documents that the Trust seeks from the Bank because all internal documents concerning the Bank's efforts to secure regulatory approval, including all communications between Attorney Scott and the Bank concerning that process, are maintained by the Bank. Indeed, many of the documents produced by the Bank are in Portuguese, which has prevented the Trust from ascertaining the complete facts relating to the Bank's efforts to secure regulatory approval. Production of Attorney Scott's communications with the Bank, which presumably are in English, will allow the Trust to evaluate whether the Bank used good faith efforts to secure regulatory approval and to determine whether the statements made in her affidavit are accurate. Further, there is no dispute that the Bank's efforts to secure regulatory approval are central to the Trust's claim that the Bank breached the implied covenant of good faith and fair dealing contained in the Lease. Accordingly, the documents concerning the Bank's efforts to secure regulatory approval that it withheld on the guise of the attorney-client privilege must be produced. *See R.W. Beck*, 2004 WL 147579 at *2, n. 4 (ordering production of privileged documents holding that the documents sought by the defendants are central to defendant's defense and are not available from any other source); *Global Investors Agent Corp. v. National Fire Ins. Co. of Hartford*, 76 Mass. App. Ct. 812, 819 (2010) (ordering production of privileged documents that plaintiffs "placed squarely at issue in the case" and were not available from any other source).

WHEREFORE, the Trust respectfully requests that this Court order that the Bank produce all documents identified in the Bank's privilege log that concern communications between Attorney Scott and the Bank concerning the Bank's efforts to

secure regulatory approval.

>Respectfully submitted,
>
>275 WASHINGTON STREET CORP., as it
>is the Trustee of the WASHINGTON STREET
>REALTY TRUST II,
>
>By its attorneys,
>
>/s/ Paul E. White
>Paul E. White (BBO #549584)
>white@srbc.com
>William F. Benson (BBO #646808)
>benson@srbc.com
>Sugarman, Rogers, Barshak & Cohen, P.C.
>101 Merrimac Street
>Boston, MA  02114
>Tel:  (617) 227-3030
>
>Martin F. Gaynor III (BBO #564384)
>mgaynor@cmjlaw.com
>Nicholas D. Stellakis (BBO #644981)
>nstellakis@cmjlaw.com
>Cooley Manion Jones LLP
>21 Custom House Street
>Boston, MA  02110
>Tel:  (617) 737-3100

Dated:  May 25, 2011

### CERTIFICATE OF SERVICE

I, Paul E. White, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on May 25, 2011.

>/s/ Paul E. White
>Paul E. White

433625