<u>REQUEST FOR ORAL ARGUMENT</u>

**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)**

| | |
|---|---|
| BANCO DO BRASIL, S.A.       ) | |
|          ) | |
| **Plaintiff,**          ) | |
|          ) | **Civil Action No. 1:09-cv-11343-NMG** |
| **v.**          ) | |
|          ) | |
| **275 WASHINGTON STREET CORP.,**   ) | |
| **as it is the Trustee of the WASHINGTON** ) | |
| **STREET REALTY TRUST II,**       ) | |
|          ) | |
| **Defendant.**          ) | |
|          ) | |

<u>**OPPOSITION OF PLAINTIFF / DEFENDANT-IN-COUNTERCLAIM BANCO DO
BRASIL TO MOTION OF DEFENDANT / PLAINTIFF-IN-COUNTERCLAIM
TO COMPEL PRODUCTION OF PRIVILEGED DOCUMENTS**</u>

Plaintiff / Defendant-in-Counterclaim, Banco do Brasil (the "Bank") submits this

memorandum of law in opposition to the motion of Defendant / Plaintiff-in-Counterclaim, 275

Washington Street Corp., as it is the Trustee of the Washington Street Realty Trust II (the

"Landlord") to compel production by the Bank of attorney-client privileged documents.  The

documents the Landlord seeks are the extensive communications between the Bank and its

outside counsel relating to the Bank's multi-year efforts to obtain approval from bank regulators

for its plans to establish a federal savings bank that was to have a branch at the leased premises.

<u>**Preliminary Statement**</u>

The Landlord's motion to compel is without basis, factually, legally and equitably.  The

primary reason why its motion must be denied is that there can be no waiver of the attorney-

client privilege unless the party asserting the privilege has put a privileged attorney-client

communication at issue. Here, the Landlord has not made and cannot make any such showing. The sole basis set forth in its Motion to Compel dated May 25, 2011 and accompanying Memorandum of Law in Support ("Def. Mem.") for its claim that the Bank waived the privilege is its mischaracterization of selected statements in an October 30, 2009 affidavit of the Bank's primary regulatory counsel, Kathleen A. Scott ("Scott 10.30.09 Aff."). That affidavit (Exhibit ("Ex.") A to Def. Mem.) was submitted in support of the Bank's motion for summary judgment that was granted in part and denied without prejudice to renewal in Magistrate Judge Dein's Report and Recommendation dated September 7, 2010, adopted by the Court by order entered September 23, 2010 (the "Report"). The Scott 10.30.09 Affidavit, however, makes absolutely no mention of any attorney-client communication, privileged or otherwise.

Nor has the Bank raised advice of counsel as a defense to the Landlord's counterclaim asserting that the Bank failed to proceed with diligence and in good faith in pursuing regulatory approval. The Bank's pleadings, papers submitted on its motion for summary judgment decided by the Report, and discovery responses are all devoid of any disclosure whatsoever of any attorney-client privileged communication. In the absence of such disclosure, none of the authorities relied on by the Landlord establishes a right to destroy or invade this important privilege, which the Bank has carefully protected.

The lack of factual or legal basis for the Landlord's presumptuous motion is compounded by its untimeliness. As noted, the Landlord's claim of waiver of the privilege rests solely on an affidavit filed by the Bank 19 months ago. The Landlord made no suggestion then or at any time until a letter from its counsel dated April 29, 2011 that it was entitled to see any of the Bank's attorney-client privileged communications. By that time the Bank had undertaken the enormous effort and expense of identifying and segregating the many thousands of documents constituting

and containing privileged communications and of preparing extensive privilege logs listing those documents. If the Landlord had had any legitimate claim of entitlement to review such communications, it could and should have asserted such a claim before putting the Bank to this enormous undertaking, which the Landlord certainly knew was entailed in responding to its broad document requests dated October 1, 2010 (Def. Mem. Ex. B).

In the final analysis the Landlord's motion to compel is a belated effort to avoid the reality of what the Bank's discovery responses to date amply demonstrate: that it indeed pursued regulatory approval diligently and in good faith. For all the Landlord's whining about the difficulty of reviewing documents in Portuguese (Def. Mem. at 1, fn. and 7) -- which should hardly be a surprise to it when it served broad requests on a Brazilian bank -- it cannot avoid the overwhelming documentation the Bank has provided (in English as well as Portuguese) of its consistent effort to realize what was for the Bank an enormously important project of establishing a retail presence in the United States through a new (*de novo*) federal savings bank ("FSB") in multiple cities, including Boston. Although the regulatory climate in what turned out to be the darkest days of an unprecedented credit crisis deprived the Bank of the regulatory approval it sought within the one-year period contemplated by Section 6.5 of the Lease, the Landlord must know by now, from the more than 90,000 pages of documents the Bank has produced, that the Bank acted with utmost diligence and good faith in seeking the necessary approvals.

The documents produced by the Bank include copies of all communications with the relevant regulatory authorities. Those are the primary evidence of the Bank's diligent and good faith pursuit of regulatory approval, in addition to the voluminous records of the millions of dollars it devoted to the FSB project over several years. Those are the communications,

moreover, that are the subject of Ms. Scott's affidavit -- not any communications she had with her client, the Bank. The Landlord's belated effort to require the Bank to disclose thousands of privileged communications when the Bank has not put any such communication at issue must be rejected.

### Prior Proceedings

The Bank commenced this action in a complaint filed on August 10, 2009 seeking a determination that its inadvertent delay by three weeks of payment of rent due in July 2009 did not constitute a breach of the Lease and was cured when the Bank paid the amount due. The Bank also sought a ruling that it was entitled to exercise its right to terminate under Section 6.5 of the Lease because it had not been able to obtain Regulatory Approval for its planned FSB within the one-year anniversary of the lease execution. The Landlord answered and counterclaimed on September 2, 2009. (A copy of its Answer and Counterclaim is attached as Ex. 1 to the affidavit of Charles G. Berry, sworn to June 10, 2011 ("Berry Aff.").) The answer contended that the Bank could not cure the breach for late payment of rent; and the counterclaim sought a determination that the Bank was precluded from exercising the termination right under Section 6.5 because it had failed to pursue Regulatory Approval (a defined term in the Lease) with the requisite diligence and good faith. The Bank answered the counterclaim on September 25, 2009 (Berry Aff. Ex. 2). Nowhere in the Bank's answer did it refer to any communication between it and Ms. Scott or any other attorney. Nor did the Bank assert as a defense that it relied on advice of counsel.

Shortly after issue was joined, the Bank moved for summary judgment seeking a determination that it had not breached, or had cured any breach of the Lease in connection with its payment of the July 2009 rent within three weeks of the due date. The Bank also sought

- 4 -

dismissal of the Landlord's counterclaim asserting that the Bank had not proceeded diligently and in good faith in seeking regulatory approval.  In support of its motion, the Bank submitted, among other papers, the affidavit of its primary regulatory counsel, Kathleen A. Scott, sworn to October 30, 2009, that is the focus of the Landlord's present motion to compel.

Chief Magistrate Judge Dein ruled on the Bank's summary judgment motion in her Report dated September 7, 2010 (Berry Aff. Ex. 3).  She granted the motion insofar as it sought a determination that the Bank had cured any breach of the Lease by payment promptly after learning of its inadvertent failure to pay the July 2009 rent.  The Report recommended that "a declaratory judgment be entered holding that the [Landlord's] attempt to terminate the lease for non-payment is null and void as the breach was accidental and insignificant, and the Bank cured any untimely payment" (pp. 31-32).  The Report also recommended, however, that the Bank's motion to dismiss the Landlord's counterclaim be denied without prejudice and that the Landlord's request for Rule 56(f) discovery "on the issue of the Bank's efforts to obtain regulatory approval" be allowed (p. 32).

The Court adopted the Report on September 25, 2010, and the Landlord served the Bank with extensive discovery requests on October 1, 2010 (Def. Mem. Ex. B).  The requests sought all documents concerning the Bank's efforts to obtain Regulatory Approval (Request No. 1, *id.* p. 2) and all those concerning communications between the Bank and the various regulators, including the Federal Deposit Insurance Corporation (the "FDIC"), the Office of Thrift Supervision (the "OTS") and the Federal Reserve Bank of New York (the "FRB") (Request No. 2, *id.* p.3).

The Bank served its written responses and objections on December 10, 2010 (Def. Mem. Ex. C), including an objection to producing any document protected from disclosure by the

attorney-client privilege (Objection No. 3, p. 2). The Bank made its initial production of documents on December 10, 2010 and a more substantial production on March 8, 2011, one day after the Court entered a Protective Order to which the parties had stipulated (Berry Aff. ¶ 7). That production included documents relating to the Bank's applications submitted to the different regulators. The Bank continued to produce documents on a rolling basis, in several stages. The volume of the production, substantially completed last month, reached more than 90,000 pages. (*Id.*)

The Bank also undertook the significant task of identifying and segregating privileged documents and preparing logs describing them as required, along with the reasons why they were being withheld. The first such log was produced on March 14, 2011 (Def. Mem. Ex. D) and listed 851 documents. The second log was produced on May 31, 2011 and consisted of 1,103 pages listing 15,230 documents (Berry Aff. ¶ 8 and Ex. 4). A significant number, probably a majority, of these privileged documents were communications to or from Kathleen Scott, mostly emails or electronically stored documents. (*Id.*)

It was not until a letter from the Landlord's attorneys dated April 29, 2011 that they informed the Bank's lawyers that the Landlord was taking the position that the Bank had waived the attorney-client privilege with respect to communications between the Bank and Ms. Scott concerning efforts to obtain Regulatory Approval. (*Id.* Ex. 5) The Landlord claimed that the Bank had "introduc[ed] as issues in this case Scott's role in the process and her communications with the Bank." (*Id.* p. 3) The letter did not identify any such communication, however, or explain how the fact that Ms. Scott had a "role in the process" entitled the Landlord to pry into her privileged communications with the Bank.

On May 25, 2011 the Landlord filed its motion to compel.  The motion claims that it

seeks disclosure of only "a limited category of documents" that the Bank claims are privileged

(Def. Mem. at 1), although, as noted, there are many thousands of such documents listed on the

Bank's privilege log.  The Landlord argues that it is entitled to all communications between the

Bank and Ms. Scott concerning the Bank's efforts to obtain regulatory approval for the FSB

project "because the Bank has introduced Attorney Scott's role in that process and her

communications with the Bank as issues in this case, thereby waiving any applicable attorney-

client privilege." (*Id.*)  The sole basis for this belated motion is the affidavit of Ms. Scott sworn

to October 30, 2009 that the Bank submitted in support of its initial summary judgment motion –

almost 19 months before the Landlord notified the Bank that it considered that affidavit to

constitute a waiver.  The particular paragraphs of that affidavit to which the Landlord's motion

points as constituting waiver of privilege do not contain a single reference to any privileged

communication between the Bank and Ms. Scott or to any advice she rendered on which the

Bank bases its defense that it pursued regulatory approval diligently and in good faith.


### Argument

### I.

**THE "AT ISSUE" DOCTRINE PERMITS A FINDING OF WAIVER OF
ATTORNEY-CLIENT PRIVILEGE ONLY WHEN THE PARTY ASSERTING THE
PRIVILEGE HAS PUT AT ISSUE THE ADVICE OF COUNSEL OR AN OTHERWISE
PRIVILEGED ATTORNEY-CLIENT COMMUNICATION OR CONFIDENCE.**

The courts in the First Circuit and Massachusetts have frequently emphasized the

importance of respecting claims of attorney-client privilege.  As noted in *Darius v. City of*

*Boston*, 433 Mass. 274, 284 (2001), in cases where "at issue" waiver is asserted, the First

Circuit's "approach preserves the privilege where possible, deeming it waived only when it is

truly necessary to do so." Accordingly, the First Circuit has held that the party seeking discovery

has the burden of showing that claims or defenses "are enmeshed in important evidence that will

be unavailable to [it] if the privilege prevails." *Greater Newburyport Clamshell Alliance v. Pub.*

*Serv. Co. of New Hampshire*, 838 F.2d 13, 20 (1st Cir. 1988). "The burden on the defendant [the

party claiming waiver of the privilege] is proportional to the importance of the privilege." *Id.*

  The rationale for protecting privileged communications unless clearly waived is deeply

embedded in our common law. The United States Supreme Court has emphasized that the

attorney-client privilege is "the oldest of the privileges for confidential communications known

to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The Court further

explained that the purpose of this privilege "is to encourage full and frank communication

between attorneys and their clients and thereby promote broader public interest in the observance

of law and administration of justice," *id.*, while serving both the client's needs for legal advice

and the lawyer's need to receive complete information in order to give sound advice. *Id.* at 390.

In light of these important purposes, the privilege cannot be lightly discarded.

  By definition, there can only be an "at issue" privilege waiver if the party asserting the

privilege has actually put at issue a privileged communication, such as by asserting an advice of

counsel defense. Thus, a party may waive an attorney-client privilege only if it makes a

privileged communication "a material issue in a judicial proceeding." *Sorenson v. H &R Block,*

*Inc.*, 197 F.R.D. 206, 208 (D. Mass. 2000). Even when a privileged communication is "at issue,"

however, waiver is not automatic but subject to a balancing test, requiring the court to consider

> whether [the party seeking discovery] has demonstrated the relevancy of the
> materials sought, whether there is any reasonable alternative source for the
> information the materials contain, and whether the [opposing party]'s
> presumptively valid interest in preserving the confidentiality of its privileged
> communications outweighs any need for disclosure.

*F.D.I.C. v. R.W. Beck, Inc.*, No. 01-CV-11982, 2004 WL 1474579, at *1 (D. Mass. July 1, 2004)

(citing *Greater Newburyport*, 838 F.2d at 20). Here, the Landlord cannot show that any

privileged communication was put at issue, nor can it satisfy any of the additional requirements.

## II.

### BECAUSE THE SCOTT AFFIDAVIT DOES NOT PUT AT ISSUE ANY PRIVILEGED COMMUNICATION, THE LANDLORD CANNOT MEET ITS BURDEN OF SHOWING WAIVER OF PRIVILEGE.

The Landlord cannot compel disclosure of thousands of privileged documents by merely

asserting in conclusory fashion that the Bank has "introduced Attorney Scott's role in that

[regulatory approval] process and her communications with the Bank as issues in this case" (Def.

Mem. 1). It must show that the Bank has affirmatively used -- and put "at issue" -- actual

privileged communications between the Bank and Ms. Scott, its primary regulatory counsel.

Landlord's counsel did not specify any such communication in its April 29, 2011 Letter (Berry

Aff. Ex. 5, p. 3), and none is identified in the Landlord's motion to compel.

The Landlord's sole basis for the claim of waiver of privilege is in a few paragraphs in

Ms. Scott's affidavit of October 30, 2009. However, as she explains in her accompanying

affidavit, sworn to June 10, 2011, in opposition to the motion to compel ("Scott 6.10.11 Aff."),

there is not a single communication between her and the Bank -- privileged or otherwise -- that is

disclosed in her October 30, 2009 affidavit. Her statements of regulatory requirements are

simply uncontestable explanations of the primary approvals the Bank was required to seek, and

did seek, for its FSB project. Her statement that she worked "intensively" with Bank personnel

for more than 18 months in efforts to obtain regulatory approval does not disclose or put at issue

any privileged communication (Scott 6.10.11 Aff. ¶ 16). Nor does her summary view that the

Bank "made every reasonable effort" in seeking approval for its planned FSB (*id.* ¶ 17).

The statements the Landlord relies on cannot constitute a waiver because they do not reveal any privileged communication. As one court recently explained:

> For testimony to constitute a waiver of the attorney-client privilege, it must disclose the substance of privileged communications. . . . Revealing the general topic of discussion between an attorney and client does not waive the privilege, unless the revelation also reveals the substance of a protected communication.

*New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 426 (D. Kan. 2009) (citations omitted).

The Landlord does not even attempt to assert that any other papers submitted by the Bank give rise to a waiver of the privilege that the Bank has so carefully guarded. It is worth noting, however, that there is nothing in the Bank's Answer to Counterclaim (Berry Aff. Ex. 2), its responses and objections to document requests (Def. Mem. Ex. C) or any other papers filed in this action that contains or reveals any privileged communications. Nor does any other filing by the Bank suggest that it is relying on advice of counsel as a defense to the counterclaim asserting that it lacked diligence and good faith in its pursuit of regulatory approval. As contemplated by the Magistrate's Report (Berry Aff. Ex. 3), it is discovery with respect to "the details of regulatory approval" (Report p. 30) that will show exactly how diligent and with what good faith the Bank pursued such approval. That turns on the regulatory applications themselves and the communications the Bank and its counsel had with the regulators -- all of which has now been provided to the Landlord. The privileged communications that the Bank had with Ms. Scott or any other counsel should have no bearing on that inquiry.

The facts here are very different from those in the cases the Landlord relies on. There is no defense asserted of reliance on advice of counsel, as in *Global Investors Agent Corp. v. National Fire Insurance Co. of Hartford*, 927 N.E.2d 480 (Mass. App. Ct. 2010) (holding that the plaintiffs effected an "at issue" waiver of attorney-client privilege because the advice of counsel was implicated in their claim), and *Henry v. Quicken Loans, Inc.*, 263 F.R.D. 458, 469-

70 (E.D. Mich. 2008) (defendants put advice of counsel at issue by arguing that their decision to classify mortgage bankers as exempt from overtime requirements of the Fair Labor Standards Act was made in ongoing consultation with counsel). *See also McLaughlin v. Lunde Truck Sales, Inc.*, 714 F. Supp. 916, 919-20 (N.D. Ill. 1989) (finding that defendants waived attorney-client privilege by filing their attorney's affidavit in support of their "good faith reliance" defense).

Finally, the submission of the Scott Affidavit does not raise the fairness concerns that are necessarily implicated with the "at issue" doctrine. *See Greater Newburyport*, 838 F.2d at 20. ("[F]airness requires that the privilege holder surrender the privilege to the extent that it will weaken, in a meaningful way, the defendant's ability to defend."). Here not only has the Bank made no privileged communication "a material issue" in its defense, but the Landlord has full access to the documents and information that bear on the "critical issue whether the Bank fulfilled its obligation of good faith and fair dealing in seeking the necessary regulatory approval to open the [federal savings] bank" (Report p.31). Those documents and information are the regulatory applications themselves and the communications that the Bank and its counsel had with the regulators -- what the Report referred to as the "details of regulatory approval" (*id*. p. 30). All those documents -- and documents that reflect the financial obligations incurred by the Bank in seeking Regulatory Approval -- have been made available to the Landlord in the extensive discovery the Bank has provided, as contemplated in the Report. The Landlord does not need to pry into the privileged communications the Bank had with Ms. Scott, and its effort to do so should be denied.

## III.

## THE LANDLORD SHOULD BE ESTOPPED
## FROM SEEKING THE REQUESTED RELIEF.

Not only is the Landlord's motion factually and legally without basis, but it is also

woefully late. It was not until a letter dated April 29, 2011 (Berry Aff. Ex. 5) that the Landlord's

counsel advised the Bank's counsel that they considered a waiver of attorney-client privilege to

have resulted from the Bank's filing of Ms. Scott's October 30, 2009 affidavit -- some 19 months

earlier. In the meantime, the Bank had gone to great trouble and expense to review the large

number of responsive documents (with over 90,000 pages ultimately produced) and separate out

some 16,000 attorney-client privileged documents, which were meticulously listed on privilege

logs (Def. Mem. Ex. D; Berry Aff. Ex. 4).

The Landlord's failure to assert the claim of waiver of privilege earlier is a telling

indication that this position only occurred to it as an afterthought and that it never had a

responsible argument for such waiver to begin with. As the court noted under similar

circumstances in *Akamai Technologies, Inc. v. Digital Island, Inc.*, No. C-00-3508, 2002 WL

1285126 at *6 (N.D. Cal. May 30, 2002), which rejected a claim of waiver of privilege by

disclosure of a damages memorandum shared in settlement discussions:

> Rather than immediately seek to compel the production of documents as a result
> of the supposed waiver of the privilege, he did nothing for months. It was not
> until late December, 2001 -- eight months later -- that Akamai even requested
> other privileged documents on the subject of the waiver. . . . If Akamai thought
> that it had such a waiver in hand, it is much more likely that they would have
> asserted it promptly. . . . That delay alone suggests that Mr. Judson did not think,
> in April, that the privilege was waived.

Here, the claim of waiver was even more belated. Not only was it 19 months between the

filing of the Scott Affidavit of October 30, 2009 and the Landlord's assertion that that affidavit

constituted a broad waiver of her communications with the Bank, but in fact the Bank had

- 12 -

already furnished to the Landlord an explanatory letter from Ms. Scott, dated March 12, 2009, that detailed the chronology and then-status of the regulatory approval process (Scott 6.10.11 Aff. Ex. 2).  That letter was substantially similar in significant part to the Scott October 30, 2009 Affidavit, including the precise explanations of regulatory requirements that the Landlord now asserts somehow inject Ms. Scott's privileged communications into the case.  The Landlord made no claim when it received the March 12, 2009 letter that the Bank waived any privilege.  In fact, the Landlord asked that the Bank share that letter for the Landlord's edification about where things stood on the regulatory approval front.  The Bank's counsel, moreover, made explicit in the covering email of March 18, 2009 by which he shared that letter with the Landlord's representatives that doing so would not open the door to any further disclosures (*see* Scott 6.10.11 Aff. ¶ 27 and Ex. 2).[1]

The Landlord's delay in raising the waiver claim is indicative of the weakness of that claim.  If there were any merit to the waiver claim, the Landlord could and should have raised it promptly before the Bank had -- diligently and in good faith -- undertaken its considerable discovery obligations, including the identification, separation and logging of some 16,000 privileged documents.  In addition, the understanding that the Bank and the Landlord had when, at the Landlord's request the Bank shared Ms. Scott's March 12, 2009 letter pursuant to the limiting conditions spelled out by the Bank's counsel, constituted an agreement that the Landlord

---

[1] In confirming the Landlord's request to have the Bank share Ms. Scott's March 12, 2009 letter, the Landlord's lawyer Michael Hammer made the following revealing statement:

> . . . <u>my clients are not suggesting that the Bank is not working diligently on obtaining its approvals</u>; and, <u>rather, . . . their concern is to be diligent to protect their own interest, which includes seeking to be kept abreast of the status so that they can determine</u> (1) how, if at all, they might be helpful, and (2) <u>whether they are comfortable continuing to sit it out or would be prudent to market the space for a replacement tenant.</u>

(Scott 6.10.11 Aff. Ex. 2, second page) (emphasis added).  It is clear from this that the Landlord wanted to be informed about the status of the process because, among other possibilities, it was considering exercising its own right under Section 6.5 of the Lease to terminate if "Regulatory Approval" were not obtained by the one-year anniversary of signing the Lease.

would not claim any waiver of privilege based on the statements contained therein. *See Akamai Technologies, Inc.*, 2002 WL 1285126 at *7.

### Conclusion

The Bank respectfully requests that the Landlord's motion to compel be denied in its entirety and that the Court grant such other relief as it deems appropriate.

### Request for Hearing

Pursuant to Local Rule 7.1(d) the Bank respectfully requests oral argument on this motion, which we believe may assist the court in addressing the issues presented and help avoid unwarranted production of documents protected from disclosure by the attorney-client privilege

Dated:  June 10, 2011

Respectfully submitted,

BANCO DO BRASIL, S.A.,
Plaintiff / Counterclaim Defendant,

By its attorneys,

_____
Eric F. Eisenberg (BBO 544682)
HINCKLEY, ALLEN & SNYDER, LLP
28 State Street
Boston, Massachusetts 02109
(617) 345-9000

_____
Charles G. Berry (*Admitted Pro Hac Vice*)
Laura W. Tejeda (*Admitted Pro Hac Vice*)
ARNOLD & PORTER LLP
399 Park Avenue
New York, NY 10022
(212) 715-1169

CERTIFICATE OF SERVICE

I, Eric F. Eisenberg, hereby certify that on this 10th day of June, 2011, this document filed through the ECF system will be send electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.