UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BANCO DO BRASIL, S.A., ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | CIVIL ACTION |
| ) | NO. 09-11343-NMG |
| 275 WASHINGTON STREET CORP., ) | |
| as it is the Trustee of the WASHINGTON ) | |
| STREET REALTY TRUST II, ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM OF DECISION AND ORDER ON
# DEFENDANT'S MOTION TO COMPEL PRIVILEGED DOCUMENTS

July 27, 2011

DEIN, U.S.M.J.

## I. INTRODUCTION

The plaintiff Banco do Brasil, S.A. (the "Bank"), as tenant, entered into a commercial lease agreement with the defendant 275 Washington Street Corp., Trustee of the Washington Street Realty Trust II (the "Trust"), as landlord. Among the issues in dispute between the parties is whether the Bank fulfilled its contractual obligations in connection with its efforts to obtain regulatory approval to open a branch at the leased premises. The matter is presently before this court on the "Defendant's Motion to Compel Production of Privileged Documents Based on Plaintiff's Waiver of Any Applicable Privilege." (Docket No. 61). By this motion, the Trust is seeking the communications between the Bank and its attorney, Kathleen Scott, concerning the Bank's efforts to obtain regulatory

approval. Because this court finds that there has not been a waiver of the attorney-client privilege, the Motion to Compel is DENIED.

## II. STATEMENT OF FACTS

### The Challenged Affidavit

In this litigation, the Trust has brought a counterclaim against the Bank asserting, among other things, that the Bank breached the implied covenant of good faith and fair dealing contained in the parties' lease by failing to use good-faith efforts to secure the necessary regulatory approvals to open a branch of the Bank at the leased premises. The Bank moved for summary judgment on this counterclaim, and submitted the affidavit of its counsel, Kathleen Scott, in support of its summary judgment motion. In her Affidavit, dated October 30, 2009, Attorney Scott reviewed her twenty years of experience in bank regulatory matters (Docket No. 17 at ¶¶ 3-6), and described the entities from which the Bank needed approval. (Id. at ¶¶ 7-13). She also explained filings submitted by the Bank, and meetings held between the Bank and regulators, which she attended. (Id. at ¶¶ 14-30). As detailed in the Affidavit, the Bank had its preliminary meeting with the Office of Thrift Supervision on November 21, 2007 (id. at ¶ 15) and received a formal notice from the FDIC returning its application on April 2, 2009. (Id. at ¶ 30). Attorney Scott concluded her Affidavit with the following two paragraphs:

> 31. I worked intensively for over 18 months with many Banco do Brasil personnel to obtain the required regulatory approvals for Banco do Brasil in order to open the [branch].

> 32. In my opinion, Banco do Brasil made every reasonable effort in diligently working to obtain the required regulatory approvals in order to open the [branch].

At no time in her Affidavit did Attorney Scott refer to or reveal any confidential communications with her client. All the filings with agencies to which she referred in her Affidavit have been produced. In fact, the information contained in the Affidavit is similar to information contained in a letter that Attorney Scott had written on March 12, 2009 describing the regulatory process and chronology, and which was produced to the Trust with the express understanding that it was being produced without waiver of the attorney-client privilege. (See Second Scott Affidavit (Docket No. 68-2) at ¶¶ 25-27). Although Attorney Scott is available to be deposed as a fact witness, the Trust has not yet taken her deposition.

### The Filing of the Motion to Compel

On October 1, 2010, a year after the date of Attorney Scott's Affidavit, the Trust served a document request seeking, among other things, documents concerning the Bank's efforts to secure regulatory approval. The Bank served its response and objections on December 10, 2010, stating therein that it intended to withhold and/or redact privileged documents. The production itself was quite extensive, and was done on a rolling basis. (See generally Affidavit of Charles G. Berry (Docket No. 68-1) at ¶¶ 6-7). Over 90,000 pages were eventually produced. (Id. at ¶ 7).

On March 14, 2011 and May 31, 2011, the Bank served extensive privilege logs identifying, inter alia, the communications with its counsel for which it was claiming a

privilege. On April 29, 2011, the Trust's counsel sent the Bank's counsel a letter indicating, for the first time, that the Trust was of the opinion that the Bank had waived the attorney-client privilege by way of the October 30, 2009 Affidavit. (Id. at ¶ 9). The Trust filed the instant motion to compel on May 25, 2011.

Additional facts will be provided below where appropriate.

### III. ANALYSIS

#### A. Standard Of Review

Under both state and federal common law,

> the essential elements of the attorney-client privilege are: (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except if the protection is waived.

New Jersey v. Sprint Corp., 258 F.R.D. 421, 425 (D. Kans. 2009). Accord Global Investors Agent Corp. v. Nat'l Fire Ins. Co., 76 Mass. App. Ct. 812, 816, 927 N.E.2d 480, 487 (2010) (quoting 8 J. Wigmore, Evidence § 2292 (McNaughton rev. ed. 1961)). Thus, "[t]he privilege protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor." New Jersey, 258 F.R.D. at 425 (internal quotation omitted).

The privilege may be waived either expressly or implicitly "by injecting certain claims or defenses into a case." Darius v. City of Boston, 433 Mass. 274, 277, 741 N.E.2d 52, 55 (2001). "For testimony to constitute a waiver of the attorney-client

privilege, it must disclose the substance of privileged communications. Underlying facts are not protected by the privilege. Revealing the general topic of discussion between an attorney and client does not waive the privilege, unless the revelation also reveals the substance of a protected communication." New Jersey, 258 F.R.D. at 426 (internal quotation omitted). In the instant case, Attorney Scott has not disclosed the substance of any confidential communication with her client. Rather, her Affidavit was limited to public events and communications in connection with the regulatory approval process. There clearly was no express waiver of the attorney-client privilege. As detailed below, there was no implicit waiver either.

### B. There Was No Implied Waiver

An "at issue" waiver of the attorney-client privilege occurs when a party implicitly waives "the privilege, at least in part, by injecting certain types of claims or defenses into a case." Darius, 433 Mass. at 284, 741 N.E.2d at 59. "That is, the privilege ends at the point where the defendant can show that the plaintiff's civil claim, and the probable defenses thereto, are enmeshed in important evidence that will be unavailable to the defendant if the privilege prevails." Greater Newburyport Clamshell Alliance v. Pub. Serv. Co. of N.H., 838 F.2d 13, 20 (1st Cir. 1988). "[E]nmeshing means something more than that the evidence of what was communicated between the attorney and client is relevant to the subject matter of the action." Sorenson v. H&R Block, Inc., 197 F.R.D. 206, 208 (D. Mass. 2000) (internal quotation omitted). Rather, the privileged information itself must have "independent relevance to the claim or defense because of its privileged

status." Id. In the instant case, nothing in Attorney Scott's Affidavit establishes that the Bank made its communications with counsel "a material issue in a judicial proceeding so as to waive the privilege." Id. (internal quotation omitted).

The most common situation where an implicit waiver is found is where the litigant raises reliance on counsel's advice as a defense to a claim. See Darius, 433 Mass. at 280 n.7, 741 N.E.2d at 56 n.7, and cases cited. Here, however, the Bank is not contending that it relied on counsel and, therefore, cannot be liable. Rather, the Bank is contending that the objective facts, to which its counsel may testify, will establish to a fact finder that it satisfied its obligations to seek regulatory approval. The mere fact that the Bank believes that it acted in good faith under its lease agreement, and that its counsel was involved in the process, does not constitute a waiver of the attorney-client privilege. See Henry v. Quicken Loans, Inc., 263 F.R.D. 458, 466 (E.D. Mich. 2008) (claim of good faith does not imply reliance on counsel unless party relies on the content of counsel's advice to support such claim).

In her Affidavit, Attorney Scott has indicated only that she and Bank employees worked for 18 months to obtain the approval of regulators. The Bank has not sought to excuse its performance by claiming it relied on its counsel in any way. The Trust is free to explore the steps the Bank and its attorney took. What it is not free to do is inquire into confidential communications between the Bank and its counsel.[1]

---

[1] The Trust may also explore the basis of Attorney Scott's belief that the Bank made "every reasonable effort" to obtain the necessary approvals, although at this juncture it is unclear

This case is factually distinguishable from McLaughlin v. Lunde Truck Sales, Inc., 714 F. Supp. 916 (N.D. Ill. 1989), on which the Trust relies.[2] In McLaughlin, an issue was whether the defendants willfully violated the Fair Labor Standards Act. The defendants asserted that they acted in good faith and in reliance on actions and statements of the Department of Labor ("DOL"), as conveyed to their counsel, who filed an affidavit detailing the actions as well as his interpretation of DOL's actions. See, e.g., id. at 918 (in his affidavit, counsel asserted that "I had been led to believe, by [the DOL investigator] that no further action would be forthcoming in light of the cases and opinion letters I had raised"). As the McLaughlin court explained:

> By voluntarily using their counsel's affidavit as proof of their good faith, the defendants imply that their interpretation of DOL's actions are reflected in their counsel's interpretation and understanding of DOL actions. More importantly, the defendants are attempting to control which of their counsel's interpretations are discoverable.

Id. at 919-20.

In the instant case, the Bank has not claimed that it relied on the regulators' actions and statements, as explained to Bank personnel by Attorney Scott. Rather, according to her Affidavit, Attorney Scott was only one of several Bank representatives who attended meetings with the regulators. It appears that the only reason that the Trust

---

whether Attorney Scott's opinion would be admissible. Again, however, Attorney Scott's opinion has not implicated confidential privileged information, and protected communications remain off limits.

[2] Obviously, a 20 year old District Court decision from another jurisdiction is not binding on this court in any way.

is seeking the privileged information is to seek "to test the credibility" of the Bank, which if permitted, "would pry open the attorney-client relationship and strike at the very core of the privilege." Darius, 433 Mass. at 280, 741 N.E.2d at 56-57.

Finally, the Trust argues that it needs the privileged information because many of the documents produced are in Spanish. This argument is not compelling. The communications with regulators, which form the basis of the Bank's defense, are in English. There is no need to destroy the attorney-client privilege to ascertain the steps undertaken by the Bank.

### C. Timeliness

This court also finds persuasive the Bank's claim that the Trust's assertion that it waived the attorney-client privilege was not made in a timely manner under the facts of this case. Here, culling and identifying the privileged materials was a very time consuming and expensive process. If the Trust truly believed that the Bank had waived the attorney-client privilege by filing the Affidavit in October 2009, it should not have waited until April 29, 2011 to raise the issue of waiver. "This delay is consistent with the Court's conclusion" that there was no waiver: if the Trust "thought that it had such a waiver in hand, it is much more likely [it] would have asserted it promptly." Akamai Techs., Inc. v. Digital Island, Inc., No. C-00-3508 CW (JCS), 2002 WL 1285126, at *6 (N.D. Cal. May 30, 2002).

### IV. CONCLUSION

For all the reasons detailed herein, the "Defendant's Motion to Compel Production of Privileged Documents Based on Plaintiff's Waiver of Any Applicable Privilege" (Docket No. 61) is DENIED.

       / s / Judith Gail Dein
       Judith Gail Dein
       U.S. Magistrate Judge