```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS

*****************************

BANCO do BRASIL,
        Plaintiff

vs.                                   Case No. 1:09-cv-11343-NMG

275 WASHINGTON STREET TRUST,
        Defendant

*****************************


                    TRANSCRIPT OF MOTION HEARING
                 BEFORE THE HONORABLE JUDITH G. DEIN
                      AT BOSTON, MASSACHUSETTS
                       ON NOVEMBER 17, 2011


APPEARANCES:

For the Plaintiff:
Arnold & Porter, LLP
399 Park Avenue
New York, New York 10022
212-715-1000
By Charles G. Berry, Esquire

For the Defendant:
Sugarman, Rogers, Barshak & Cohen, PC
101 Merrimac Street, 9th Floor
Boston, Massachusetts 02114
617-227-3030
By Paul E. White, Esquire



Transcriber:  Karen M. Aveyard,
              Approved Federal Court Transcriber

        ------------------------------------------------------

                         TRANSCRIPTION PLUS
                          1334 ELM STREET
                  LEOMINSTER, MASSACHUSETTS 01453
                          (978) 466-9383
                       www.transcriptionplus.com
```

P R O C E E D I N G S

THE CLERK:  The United States District Court for the District of Massachusetts is now in session, November 17th, the year 2011, in the matter of Banco versus 275 Washington Street, Civil Action No. 2009-11343.

Could counsel please identify themselves for the record.

MR. BERRY:  Charles Berry, Arnold & Porter, pro hac vice for the plaintiff, Banco do Brasil.

MR. WHITE:  Good morning, your Honor.  My name is Paul White from Sugarman Rogers on behalf of the landlord in this matter, 275 Realty Trust.

THE COURT:  Okay.  Well, we're here on plaintiff's motion to compel, so I'll hear you.

MR. BERRY:  Thank you, your Honor.

This motion to compel seeks the disclosure of some 24 documents that were identified on the landlord's privilege log. They are identified as having been shared outside of the attorney-client relationship with Emily Ou, who is an agent at Cushman & Wakefield, the real estate brokerage firm.  We also seek permission to proceed with discovery from Cushman & Wakefield, which we had served subpoenas on.

We served our document request on March 31st.  The privilege log was not received, however, until September 15th,

1  which was just one month before the end of discovery in this
2  action.  We promptly sent a letter to the landlord counsel
3  demanding production of the documents.
4          The grounds for the motion are simple and clear.  No
5  attorney-client privilege can attach to communications that the
6  landlord's lawyer had with somebody outside of the
7  attorney-client relationship, and Ms. Ou and Cushman &
8  Wakefield are indisputably not employees of the landlord or
9  clients of Attorney Hammer.
10         The landlord concedes the general rule that disclosure
11 to unrelated third-parties generally destroys the
12 attorney-client privilege.  That's on Page 5 of their opposing
13 memorandum.  As the party resisting discovery, the landlord has
14 the burden of showing that any document or information is
15 privileged.  Judge Gorton's ruling in Tyler against Suffolk
16 County makes that very plain.  And, as I said, Ms. Ou is not an
17 employee of the landlord and there is no showing that she was
18 necessary for the communication or transmission of legal
19 advice.
20         Significantly, there's no affidavit submitted by her,
21 nor is there any copy of the retainer agreement of Cushman &
22 Wakefield, the document that we had specifically requested.
23 She's simply a real estate agent.  She was not hired to
24 facilitate the communication of legal advice, she was hired to
25 try to find a tenant for the commercial space that is owned by

1   the landlord.
2            THE COURT:  And is she someone that participated with
3   the arrangement with the bank?
4            I mean --
5            MR. BERRY:  I think she was involved early on in the
6   negotiations leading up to the lease, as far as I can tell.
7   The great volume of the documents that we're looking for --
8   there are 24, they're identified on the privilege log -- I
9   think all but three or four of them are for the period after
10  the lease was entered into, and significantly most of those,
11  almost all of them, are identified as being privileged relating
12  to legal advice concerning regulatory approval.
13           As Your Honor knows, the primary issue that we are
14  dealing with at this point is whether the bank was diligent in
15  pursuing its efforts to obtain regulatory approval from various
16  bank regulatory authorities.  There isn't the slightest
17  suggestion that Ms. Ou had any knowledge whatsoever with
18  respect to bank regulatory approval, or that her involvement in
19  attorney-client communications was somehow necessary for the
20  rendering of advice on that subject.
21           So particularly with respect to that subject, but also
22  with respect to any other e-mails.  There's no indication that
23  her involvement facilitated and was highly necessary for the
24  communication of --
25           THE COURT:  Let me just say, sir, I didn't go through

1  the whole list, and it really is only 24, I guess.
2          MR. BERRY:  Yes.
3          THE COURT:  But are they all copied to the client as
4  well, or are there any direct communications?
5          MR. BERRY:  I think in every instance they are
6  communications directly between the client and the attorney,
7  with a cc to Emily Ou.  There's one, I believe, where Emily Ou
8  is indicated as the author of the e-mail, but --
9          (There was a break in the audio.)
10         MR. BERRY:  -- one of the points that's made in the
11 opposing memorandum and affidavit of Attorney Hammer is that he
12 felt it necessary for Emily Ou to receive his legal advice.
13 Well, that's not the purpose of -- you know, the receipt of
14 legal advice is not something that would permit an agent to be
15 a necessary conduit or facilitator rendering legal advice, and
16 so for that additional reason there is absolutely no basis,
17 particularly under the reasoning of the Cavallaro decision of
18 the First Circuit for the assertion of privilege here, and we
19 ask that our motion to compel be granted.
20         Thank you.
21         THE COURT:  Mr. White?
22         MR. WHITE:  Thank you, your Honor.
23         To begin, I think you hit the nail right on the head.
24 When you ask the question whether or not these were direct
25 communications with Ms. Ou or whether she was merely copied on

1   those communications, Mr. Berry is quite right that in every
2   instance there may perhaps be that one exception that he
3   mentioned.
4          She is copied on those communications.  In other
5   words, there is absolutely no doubt in this case that these
6   were communications that were it not for this issue, were it
7   not for the fact that she was cc'ed on these communications,
8   they're clearly attorney-client privileged communications, they
9   were clearly intended to be communications between the attorney
10  and the client, and they go to the heart of the issues in this
11  case.
12         THE COURT:  Well, what's missing from your papers is
13  any indication that Ms. Ou -- is that how you pronounce it --
14  "Ou" knew that she was supposed to keep them confidential, that
15  she's somehow involved in that this was a communication that
16  was intended to be kept confidential.
17         MR. WHITE:  That's provided by Mr. Hammer, your Honor,
18  by the attorney, and it seems to me he is the appropriate
19  person to indicate based on the test that is in place, which is
20  whether or not her involvement was required for the
21  rendering --
22         THE COURT:  You've given us a very, very general
23  affidavit here.  I don't know what to do with it.
24         MR. WHITE:  With all due respect, your Honor, given
25  the nature of a privilege, which is that Mr. Hammer is

1   describing why her involvement was important to the activities
2   that he was engaged in without revealing what the particular
3   communications were, it is of necessity a general conclusory
4   affidavit, but it provides exactly the -- and meets exactly the
5   standard, I submit, that is applicable here, which is that he
6   doesn't merely say that her involvement was useful to him, he
7   says it was essential to him; that she was integral in what he
8   was doing, and that's not surprising.  She was the person, the
9   agent -- undisputed that she is the agent of the landlord, of
10  the trust, who has had the direct involvement and interfaced on
11  behalf of the trust with the bank with respect to all of the
12  matters that are at issue in this case.
13          She is, in essence, the point person for the trust in
14  connection with this matter, and as to all of those matters,
15  and he describes what the three different types of matters were
16  as to which he communicated with his client, the initial
17  execution of the lease, post-execution matters, and then
18  ultimately obtaining information from her to facilitate him
19  providing legal advice to the client concerning what was
20  becoming the matter of greatest concern, whether or not the
21  bank was obtaining regulatory approval in an appropriate way,
22  and all of that is set out appropriately in his affidavit.
23          If for some reason you believe, the Court believes,
24  that I have overlooked obtaining an affidavit from her to
25  indicate that she understood that the communications were

1   confidential communications, I would ask Your Honor that I be
2   provided with an opportunity to obtain that affidavit and to
3   submit it to the Court, because certainly it is my
4   understanding that all of those requirements are met in this
5   instance.
6           (There was a break in the audio.)
7           MR. BERRY:  If I may, just a couple of words by way of
8   rebuttal.
9           Mr. White indicated that Ms. Ou was the point person
10  for communications with the bank.  In fact, there's nothing in
11  the record to suggest that, but there was testimony by Craig
12  Harwood, one of the principles of the landlord, on the very day
13  that we filed our reply papers, and so we put a footnote on
14  Page 2 of our reply memo where he used those very words and
15  said that he was the point person for leasing of the subject
16  property.
17          He also stated in response to a direct question -- and
18  I'm sorry we don't yet have the transcript, but we'd be happy
19  to provide that -- that Ms. Ou, his rental agent, did not
20  assist the landlord with respect to the regulatory approval
21  process.  The subject matter of these e-mails, all but a small
22  number of them, is said to be legal advice concerning
23  regulatory approval, and their own principal, Craig Harwood,
24  has stated under oath that she was not involved in the
25  regulatory approval process.

1           So I think the record that we have is very clear, that
2   she is not an agent of a type who was retained for the express
3   purpose of facilitating attorney-client communication, and I
4   would just again direct the Court's attention to the First
5   Circuit's 2002 decision in Cavallaro where that case involved
6   an accounting firm, Ernst & Young, and among other things the
7   court pointed out in ruling that communications with Ernst &
8   Young were not privileged, that Ernst & Young was not employed
9   for this purpose, that is for the purpose of facilitating
10  attorney-client communications.
11          So I think it's very clear on the record as it stands
12  that there is no privilege here, and I would request that the
13  Court rule if Mr. White had sought to get an affidavit of
14  Ms. Ou at some earlier date, he could have done it.  He has not
15  done so and I don't, respectfully, believe that he should be
16  given that opportunity.  We served our request back in March.
17  The responses were due soon after that.  We gave him an
18  extension of time, but they waited until September 15th to give
19  us a privilege log indicating that they had withheld these
20  things.
21          The Court's deadline for completion of discovery was
22  October 15th, and one of the requests in our motion is that we
23  be permitted to have this very small remaining discovery, you
24  know, as soon as possible, but after the October 15th date.
25          THE COURT:  This is my concern right now.  I have an

1    inkling -- I don't think that I have enough facts.  I don't
2    think that they gave me enough information.  But I have a
3    concern that it would be privileged otherwise, you know, and
4    I'm going here on a burden of proof kind of thing.  That makes
5    me a little uncomfortable, frankly, to waive an attorney-client
6    privilege.
7             So I would like to review these documents in-camera.
8             Is there any reason that I can't do that?
9             MR. BERRY:  No, your Honor.  I actually have some
10   authority on your ability to do that and we would certainly
11   welcome it.  We rather suspect that these documents aren't
12   privileged at all, but that's another story.
13            THE COURT:  There's only 24.  Usually I get this when
14   there are 4,000.  I'm like so excited that there's only 24
15   that --
16            MR. WHITE:  Yes, I've had those cases too, your Honor.
17            The only concern that I have about that really stems
18   from my own recent experiences (inaudible) where the rule is
19   very clear that in-camera inspection is frowned upon simply
20   because it does destroy the attorney-client privilege.  But in
21   the circumstances here -- and I suppose this is the concern I
22   have there, is that I don't think that there is an issue that
23   the documents are privileged, other than the fact that she is
24   copied on the documents.  So --
25            THE COURT:  Well, I have to tell you, I do not think

1   that you have established sufficient facts to establish her
2   role, so you have a choice.  Either I'll look at them in-camera
3   or you have a week to provide an affidavit, and we'll stand on
4   that from her.  And if it's insufficient, it's insufficient.
5           MR. WHITE:  Your Honor, that is to provide an
6   affidavit from Ms. Ou that she understood that these were
7   confidential communications?
8           THE COURT:  No.  Whatever her role was --
9           MR. WHITE:  Yes.
10          THE COURT:  -- let her define her role and let her
11  define her understanding that she was -- whether there was an
12  understanding that these communications were intended to be
13  kept confidential.
14          MR. WHITE:  Yes.  And that's obviously --
15          (There was a break in the audio.)
16          MR. WHITE:  -- (inaudible), your Honor.
17          May I give consideration to, and I want to consult
18  with the client obviously about that, may I do both of those
19  things?
20          In other words, I can provide you with the document,
21  but it seems to me that one of the things the Court is also
22  concerned about is that she understood that these were
23  confidential communications.
24          THE COURT:  Yes, with the understanding that you are
25  legitimately annoyed that this was not done before.

1        MR. BERRY:  Well, it's not just that, your Honor,
2   there's more to the showing than her understanding that these
3   communications are confidential.  There has to be a showing
4   that she was retained for the purpose of facilitating
5   attorney-client communications, and in this instance,
6   specifically on the subject of bank regulatory approval.
7        THE COURT:  Well, this is -- my order is that she has
8   until the Monday after Thanksgiving to provide an affidavit
9   that describes her role, what she was hired to do and how she
10  treated this affidavit.  I mean, I don't want to -- I'm not
11  dictating it to you.  You provide the information that you
12  think is important.  We're going to rise and fall on that,
13  okay.
14       MR. WHITE:  I understand, your Honor.
15       THE COURT:  And then you can decide whether or not you
16  want to submit them in-camera --
17       MR. WHITE:  Yes.
18       THE COURT:  -- and I'll factor that in as well.
19       MR. WHITE:  Thank you, your Honor.
20       MR. BERRY:  If I may, your Honor, one additional
21  point.  If there is to be a submission by Ms. Ou, I would
22  request that the landlord be required to produce the retainer
23  agreement for Cushman & Wakefield.  There was testimony at
24  Mr. Craig Harwood's deposition that there was a long-standing
25  retainer agreement going back some years, and then, as I

1    understood it, a more specific engagement with respect to the
2    lease to the bank; and I think that that is an important
3    factor, and frankly their failure to produce that, I think, is
4    a strong and telling indication that they recognize that she
5    was not retained for the purpose of assisting in
6    attorney-client communications.
7             THE COURT:  How is that privileged?
8             MR. BERRY:  It's not privileged.
9             THE COURT:  How is that document privileged?
10            MR. WHITE:  I don't believe that's what the objection
11   was.  I believe the objection was that there is a highly
12   limited scope of discovery under the Court's order that was to
13   take place now and that wasn't within it.
14            THE COURT:  All right.  You need to produce it, okay.
15   You need to produce it with her affidavit.  And I will give you
16   a week.  I don't want to delay this much.  You have an
17   extension on the discovery for this.  But if you want a week to
18   file a supplemental memo after she files her affidavit, if you
19   feel that it's insufficient, you can do that.
20            MR. BERRY:  I appreciate that, yes.
21            THE COURT:  Okay.  So when you file her affidavit, you
22   need to give me whatever you want to give me, all right.
23            MR. WHITE:  Yes.
24            THE COURT:  And then you can file the response and
25   I'll deal with it on the papers, whatever those papers might

1    be, okay.
2            MR. WHITE:  Fine.
3            THE COURT:  But you need to produce the engagement
4    contract.
5            MR. WHITE:  Yes, your Honor.
6            MR. BERRY:  There is one other scheduling issue, which
7    is that the Court's deadline for submitting dispositive motions
8    is December 15th.  It's coming up pretty soon.  We were
9    prepared to --
10           THE COURT:  Can I ask you, is this schedule still
11   before me, do you know, or are you on Judge Gorton's list?
12           MR. BERRY:  I think that was Judge Gorton.  It's
13   actually an exhibit to our papers here.
14           THE COURT:  I think that it was only referred to me
15   for this motion.
16           MR. BERRY:  Yes, I think that's right.
17           THE COURT:  So I will enter an order that discovery is
18   extended to cover this, but you're going to need him to extend
19   the summary judgment date.
20           MR. BERRY:  Okay.  I'm not eager to extend it long,
21   but this is a point that would be relevant.
22           THE COURT:  We will have this decided, you know, the
23   first week in December.  As soon as you submit your things, I
24   promise you we'll deal with it.
25           MR. BERRY:  Fine.  Very good.

```
1              THE COURT:  Okay.  But I can't extend his date.
2              MR. BERRY:  I understand.
3              THE COURT:  Okay.  Anything else?
4              MR. WHITE:  Your Honor, the date for the submission of
5    this is the Monday after Thanksgiving by me?
6              THE COURT:  Yes.
7              MR. WHITE:  Thank you.
8              THE COURT:  And that's anything that you're going to
9    do.
10             MR. WHITE:  Yes.
11             THE COURT:  And do you want to respond by Friday, I
12   mean, we can do it shorter?
13             MR. BERRY:  We'll try to do it.  I just assume have
14   until Monday, but --
15             THE COURT:  All right.  Whenever you do it.  If not,
16   you have until the Monday after that.  I don't have the dates
17   in my head here.
18             MR. BERRY:  All right.  I think it's the --
19             THE COURT:  So we're dealing with the 28th and the
20   5th.
21             MR. BERRY:  And the 5th.  That's good, yeah.
22             THE COURT:  Okay.
23             (Pause.)
24             THE COURT:  Okay.  Thank you.
25             MR. BERRY:  Thank you, your Honor.
```

1          MR. WHITE:  Thank you.

2

3          (The hearing was concluded.)

C E R T I F I C A T I O N

     I, Karen M. Aveyard, Approved Federal Court Transcriber, do hereby certify that the foregoing transcript, consisting of 16 pages, is a correct transcript prepared to the best of my skill, knowledge and ability from the official digital sound recording of the proceedings in the above-entitled matter.


/s/ Karen M. Aveyard

Karen M. Aveyard


November 18, 2011

Date