UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BANCO DO BRASIL, S.A.,          )
                                )
         Plaintiff,             )
    v.                          )    CIVIL ACTION
                                )    NO. 09-11343-NMG
275 WASHINGTON STREET CORP.,    )
as it is the Trustee of the WASHINGTON )
STREET REALTY TRUST II,         )
                                )
         Defendant.             )

# MEMORANDUM OF DECISION AND ORDER
# ON PLAINTIFF'S MOTION TO COMPEL

April 12, 2012

DEIN, U.S.M.J.

## I. INTRODUCTION

This matter arises out of a commercial lease agreement ("Lease") under which the plaintiff, Banco do Brasil, S.A. (the "Bank"), leased a portion of the premises located at 227-275 Washington Street, Boston (the "Premises") from the defendant, 275 Washington Street Corp., Trustee of the Washington Street Realty Trust II (the "Trust"), for use as a retail branch banking facility. In connection with the leasing of the Premises, the Trust appointed the commercial real estate firm of Cushman & Wakefield, Inc. ("Cushman & Wakefield") to act as its sole agent having the exclusive right to lease the Premises on behalf of the Trust. Emily Ou, a Senior Director at Cushman & Wakefield, was the real estate broker who acted as the Trust's leasing representative with respect to

its dealings with the Bank. During discovery, the Trust withheld documents on the grounds of attorney-client privilege that reflected communications between the Trust and its attorney, Michael A. Hammer, Esq., which were copied to Ms. Ou, as well as documents reflecting direct communications between Ms. Ou and Attorney Hammer.[1] The Trust claims that those documents are privileged, despite having been shared with Ms. Ou, because Ms. Ou was acting as an agent of the Trust at all relevant times, and because her involvement in the negotiation and execution of the Lease was necessary to assist Attorney Hammer in rendering legal advice to the Trust.

The matter is presently before this court on "Plaintiff Banco do Brasil's Motion to Compel Production of Documents Shared with Third Party and for Related Discovery." (Docket No. 75). By its motion, the Bank contends that the Trust's voluntary disclosure of its attorney-client communications to Ms. Ou and Cushman & Wakefield defeats the Trust's claim of privilege. Accordingly, the Bank is seeking an order compelling the Trust to produce all of the documents identified on its privilege log that include Ms. Ou and Cushman & Wakefield, and allowing the Bank to obtain discovery from Ms. Ou and Cushman & Wakefield pursuant to previously served subpoenas.

After consideration of the parties' submissions, their oral arguments, and this court's *in camera* review of the challenged documents, this court finds that the communi-

---

[1] The Trust identified 24 documents as protected by the attorney-client privilege. Two of these documents were also withheld as attorney work product. (See Pl. Ex. 3 (Docket No. 76) at Doc. Nos. 1 & 2). Since the Trust has not challenged the attorney work product designation, those documents do not need to be produced and will not be discussed herein.

2

cations at issue are not covered by the attorney-client privilege. While Ms. Ou may have provided "independent information and expertise for the attorney to use in representing his or her client," she was not retained to "serve some specialized purpose in facilitating the attorney-client communications." Comm'r of Revenue v. Comcast Corp., 453 Mass. 293, 307, 308, 901 N.E.2d 1185, 1197, 1198 (2009) (internal quotations and citations omitted). For this and the other reasons detailed herein, the communications are not privileged, and the Bank's motion to compel is ALLOWED.

By **April 19, 2012**, the Trust shall produce all of the documents identified on its privilege log that include Ms. Ou, except for the documents that have been withheld as attorney work product. Within **14 days** from its receipt of the documents, the Bank shall take the deposition and document discovery of Ms. Ou and Cushman & Wakefield pursuant to previously served subpoenas.

## **STATEMENT OF FACTS**[2]

This matter arises out of a Lease for the Premises, which the Bank, as tenant, entered into with the Trust, as landlord, on August 29, 2008. (Compl. (Docket No. 1),

---

[2] The facts are derived from the following: (1) the documents attached to the Affidavit in Support of Motion of Plaintiff Banco do Brasil to Compel Production of Documents (Docket No. 76) and to the Reply Affidavit in Support of Motion of Plaintiff Banco do Brasil to Compel Production of Documents (Docket No. 80-1) ("Pl. Ex. __"); (2) the documents attached to the Affidavit in Support of Plaintiff Banco do Brasil's Memorandum of Law in Response to Defendant's Supplemental Submissions (Docket No. 85-1) ("Pl. Supp. Ex. __"); (3) the Affidavit of Michael A. Hammer in Support of Defendant's Opposition to Plaintiff's Motion to Compel (Docket No. 78) ("Hammer Aff."); and (4) the exhibits attached to the Defendant's Supplemental Memorandum in Opposition to Plaintiff's Motion to Compel Production of Documents (Docket No. 83) ("Def. Ex. __").

3

Ex. A at p.1). Michael A. Hammer, Esq. represented the Trust in connection with the negotiation and execution of the Lease. (Hammer Aff. ¶ 1). After the Lease was signed, he continued to represent the Trust in its dealings with the Bank, and to provide legal advice to the Trust with respect to the Bank's efforts to obtain federal regulatory approval, which was the prerequisite for the Lease to begin and for the Bank to operate a branch at the Premises. (Ou Aff. (Def. Ex. A) ¶ 4; Hammer Aff. ¶ 7). Among the critical issues which remain in dispute in this matter is whether the Bank breached the implied covenant of good faith and fair dealing contained in the Lease by failing to use good faith efforts to obtain the necessary regulatory approvals.

Emily Ou, a Senior Director at the commercial real estate firm of Cushman & Wakefield, acted as the agent and leasing representative of the Trust in connection with the leasing of the Premises to the Bank. (Hammer Aff. ¶ 2; Ou Aff. ¶ 2). After this litigation commenced, the Trust retained Ms. Ou as its broker to find a replacement tenant for the Premises. (Pl. Ex. 8 at 98; Pl. Ex. 9 at 70). At issue is whether the disclosure of the Trust's attorney-client communications to Ms. Ou undermines the defendant's claim that the communications are privileged.

### **Cushman & Wakefield's Relationship With the Trust**

The record indicates that the Trust appointed Cushman & Wakefield as its sole agent with the exclusive right to lease the Premises pursuant to an Exclusive Right to

Lease Contract.[3] (Def. Ex. B). Under that agreement, Cushman & Wakefield agreed to use its best efforts to find a satisfactory tenant for the Premises, and to solicit the cooperation of other licensed real estate brokers in order to accomplish that goal. (Id. ¶ 2). The parties also agreed in relevant part that any lease negotiations would be conducted jointly by Cushman & Wakefield and the Trust, or at Cushman & Wakefield's direction, subject to the Trust's review and final approval. (Id. ¶ 4). The Trust further agreed to pay Cushman & Wakefield a commission if the firm was successful in procuring an acceptable tenant for the Premises. (Id. ¶¶ 5-6). Although Cushman & Wakefield was appointed as the sole agent of the Trust for purposes of leasing the Premises, the Trust acknowledged the firm's right to represent potential tenants as well. (Id. ¶ 8). Accordingly, the defendant gave Cushman & Wakefield its explicit consent to engage in such dual representation. (Id.).

Ms. Ou was the broker from Cushman & Wakefield who represented the Trust in its efforts to lease the Premises. (Pl. Supp. Ex. B at 36). In her capacity as the Trust's exclusive leasing representative, Ms. Ou was the person who initially procured the leasing deal with the Bank, and interacted with the Bank's representatives on behalf of

---

[3] Following a hearing on the motion to compel, this court directed the Trust to file "a copy of any agreement pursuant to which the defendant retained Cushman & Wakefield to provide services in connection with the leasing of the defendant's premises." (Docket No. 81 ¶ 1). Pursuant to that order, the Trust filed a copy of an Exclusive Right to Lease Contract between the Trust and Cushman & Wakefield, which is dated December 24, 2002, and was to continue in effect "until December 31, 2003 unless sooner terminated." (Def. Ex. B ¶ 1). Although the Contract filed by the defendant expired long before the parties to this lawsuit entered into the Lease in August 2008, this court will accept it as a representation as to the nature of the continuing relationship between Cushman & Wakefield and the Trust.

5

the Trust. (Ou Aff. ¶ 3; Hammer Aff. ¶ 2). Ms. Ou also kept in touch with the Trust and the Bank following the execution of the Lease, seemingly to assist in determining whether and when the Bank would begin to occupy the premises. (See Hammer Aff. ¶ 6). However, there is no indication that Ms. Ou had any special expertise in the banking industry or any particularized knowledge with respect to obtaining regulatory approval for the operation of a bank.

The Trust has submitted the affidavits of Ms. Ou and Attorney Hammer in opposition to the motion to compel. In very conclusory language, they allege that Ms. Ou provided Attorney Hammer with information to assist him in providing legal advice to the Trust. For example, Attorney Hammer has attested that Ms. Ou:

> served as the direct contact and liaison between me and the principals who were the other business representatives of the Trust on certain issues relating to the Lease. On many matters relating to the execution of the Lease, it was imperative that I obtain input from and keep Ms. Ou, as the Trust's agent and leasing representative, informed of matters on which I was asked to represent and provide legal advice to the Trust. I also requested that Ms. Ou provide her professional viewpoint as leasing representative and related information that would assist me on behalf of the Trust to properly reflect the business understandings and proposals to be incorporated into the negotiation and execution of the Lease. I copied Ms. Ou on communications that I had with the Trust to improve my comprehension of the facts as she, as the exclusive agent in charge of leasing the Premises, may be in possession of certain facts that would assist in my representation and provision of legal advice to the Trust.

(Hammer Aff. ¶ 3). Further, according to Attorney Hammer, on February 27, 2009, when the Bank had still not obtained regulatory approval, he sent the Bank's attorney a letter

"requesting a meeting to discuss, among other things, what steps the Bank had taken to obtain Regulatory Approval as that term is defined in the Lease." (Id. ¶ 7). According to Attorney Hammer:

> Prior to sending this letter, I provided legal advice to the Trust concerning the Bank's failure to provide detailed and specific information regarding its efforts to obtain Regulatory Approval. I copied Ms. Ou on many of these communications because she played an integral part in the negotiation of the terms and monitoring the execution of the Lease and post-execution matters relating to commencement of the Lease term, and to obtain any relevant information from her that would assist in my representation and provision of legal advice to the Trust.

(Id.).

Ms. Ou's affidavit mirrors the representations made by Attorney Hammer. As she has attested in relevant part:

> At the request of the Trust, I assisted Michael Hammer in the Trust's negotiations with the Bank. After the Lease was executed, I was responsible for monitoring the execution of the Lease and thereafter maintaining a dialog with the leasing representatives of the Bank. I also served as a direct contact and liaison between Michael Hammer and the principals of the Trust on certain issues relating to the Lease.
>
> On many matters relating to the negotiation and execution of the Lease, Michael Hammer requested that I provide my viewpoint and/or factual information as the agent of the Trust to enable him to provide legal advice to the Trust. Likewise, I understood that Mr. Hammer copied me on certain communications in order to assist him in providing legal advice to the Trust.

(Ou Aff. ¶¶ 5-6). Nothing more specific about the type of information Ms. Ou had or conveyed is provided.

**The Challenged Communications**

7

During discovery, the Trust produced a privilege log in which it listed 113 documents that it withheld in their entirety, as well as another 71 documents that it had redacted. (Pl. Ex. 3). Twenty-four of those documents consist of communications that were withheld on the grounds of attorney-client privilege and were shared with or generated by Ms. Ou. (See id.). As noted above, the Trust claimed attorney-work product in connection with two of the 24 documents, and they will not be considered further herein. (See note 1, supra). In general, the Trust has described the withheld documents as reflecting "legal advice concerning regulatory approval process" or "legal advice concerning lease provisions." (Pl. Ex. 3). By its motion, the Bank is seeking disclosure of each of these documents in their entirety. It is also seeking permission to take discovery of Ms. Ou and Cushman & Wakefield pursuant to subpoenas that were served on them in September 2011, including discovery of communications that Ms. Ou had with the Trust and its counsel. (See Pl. Ex. 5).

Additional factual details relevant to this court's analysis are described below where appropriate.

### III. ANALYSIS

The Bank argues, in support of its motion to compel, that the attorney-client privilege does not apply to the communications at issue because the voluntary disclosure of those communications to Ms. Ou, a third-party outside the attorney-client relationship between the Trust and its counsel, constituted a waiver of the privilege. (Pl. Mem. (Docket No. 76) at 1, 4). The Trust, on the other hand, contends that the privilege

8

applies, and no waiver took place, because Ms. Ou was acting as an agent and representative of the Trust, "and her involvement in legal issues concerning the leasing of the premises was necessary in order for Attorney Hammer to provide effective legal representation and advice to the Trust[.]" (Def. Opp. (Docket No. 77) at 1). "The party invoking a recognized privilege has the burden of establishing, not only the existence of that privilege, but also that the established privilege was not waived." Cavallaro v. United States, 153 F. Supp. 2d 52, 56 (D. Mass. 2001), aff'd, 284 F.3d 236 (1st Cir. 2002). As detailed below, this court finds that the Trust has not met its burden of showing that the attorney-client privilege was not waived by the disclosure of its attorney-client communications to Ms. Ou.

### A. The Attorney-Client Privilege

Because this action has been brought pursuant to the court's diversity jurisdiction, and involves only state law claims,[4] Fed. R. Evid. 501 provides that state law governs whether the challenged documents are privileged.[5] The formulation of the attorney-client

---

[4] Although the plaintiff's claim in this case also arises under the Federal Declaratory Judgments Act, "[t]hat Act merely makes available an added anodyne for disputes that come within the federal courts' jurisdiction on some other basis. Thus there must be an independent basis of jurisdiction before a federal court may entertain a declaratory-judgment action." Alberto San, Inc. v. Consejo de Titulares del Con-Dominio San Alberto, 522 F.3d 1, 5 (1st Cir. 2008) (internal quotations, punctuation and citations omitted). This court's diversity jurisdiction provides the independent basis of jurisdiction in the instant case.

[5] Fed. R. Evid. 501 provides in relevant part as follows: "the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness,

9

privilege that has been endorsed by the Massachusetts Supreme Judicial Court ("SJC") provides as follows:

> (1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.

Comm'r of Revenue, 453 Mass. at 303, 901 N.E.2d at 1194 (internal quotations omitted). "Disclosing attorney-client communications to a third party, including [a real estate broker], generally undermines the privilege." Id. at 306, 901 N.E.2d at 1196. The question raised by the instant motion is whether the disclosure of the Trust's attorney-client communications to Ms. Ou waived the privilege or whether Ms. Ou's status vis-à-vis the Trust, or her involvement in the Trust's legal matters, justify application of the privilege in the instant case.

### B. Ms. Ou's Status Vis-à-Vis the Trust

The Trust appears to argue that the Bank's motion to compel should be denied because Ms. Ou was an "agent" of the Trust and, presumably, therefore, Attorney Hammer's consultations with her were the equivalent of his consulting with his "client." (See Def. Opp. at 4-5; Def. Supp. Mem. (Docket No. 83) at 2). However, the fact that Ms. Ou served as the Trust's exclusive leasing agent was not sufficient to include her in the group of corporate employees who were free to communicate with counsel under the

---

person, government, State, or political subdivision thereof shall be determined in accordance with State law."

protection of the attorney-client privilege. See Upjohn Co. v. United States, 449 U.S. 383, 391, 394-95, 101 S. Ct. 677, 683, 685, 66 L. Ed. 2d 584 (1981) (cited by defendant) (holding that employees' communications with counsel were privileged even though employees were not in upper-echelon management group).

It is undisputed that throughout the course of her relationship with the Trust, Ms. Ou was a Senior Director at Cushman & Wakefield, a commercial real estate firm that was a separate entity from the Trust. She was not an employee of the Trust, and had no role other than as a third-party real estate leasing agent hired by the Trust. Cushman & Wakefield's agreement with the Trust provided that the Trust had final approval over any lease negotiated by Cushman & Wakefield, making it clear that Ms. Ou was not a decisionmaker for the Trust. (Def. Ex. B ¶ 4). Moreover, the parties' agreement contemplated the possibility that Cushman & Wakefield could represent a tenant or prospective tenant while serving as the Trust's real estate agent — thereby defeating any assumption that Ms. Ou was to be a confidential representative of the Trust. The cases on which the Trust relies, which address whether an attorney's communications with specific corporate employees were protected by the attorney-client privilege, have no application here. See, e.g., id. (holding that communications made to company's counsel by employees who were not "officers and agents responsible for directing the company's actions in response to legal advice," were nevertheless protected by the attorney-client privilege) (internal quotations and punctuation omitted); Ellingsgard v. Silver, 352 Mass. 34, 40, 223 N.E.2d 813, 817 (1967) (finding that attorney-client privilege could extend to

11

written statement made by defendant's employee and given to defendant's counsel).

Without belaboring the point, it is also significant that Ms. Ou did not have any expertise in obtaining regulatory approval for the Bank to operate a branch at the Premises, and was not hired to assist the Trust in connection with that process. Nevertheless, the record demonstrates that many of the attorney-client communications on which Ms. Ou was copied relate to the Trust's concerns about the Bank's ability to obtain federal regulatory approvals. (See Pl. Ex. 3). Because Ms. Ou did not assist the Trust with such matters, Attorney Hammer would have had little if any need to confer with her as the Trust's employee or agent in connection with rendering legal advice on that issue. (See Pl. Supp. Ex. B at 45).

The Trust, relying on In re Bieter Co., 16 F.3d 929 (8th Cir. 1994), contends that Ms. Ou should be deemed the equivalent of an employee for purposes of applying the attorney-client privilege. As an initial matter, the Trust has not pointed to any controlling authority in which a court applying Massachusetts law has found that a third-party in Ms. Ou's position should be treated like a corporate employee whose communications with the company's counsel are considered privileged. Furthermore, the facts of Bieter are easily distinguishable from the instant case.

In Bieter, the Eighth Circuit determined that an independent consultant who was retained by a company to provide advice and guidance regarding commercial and retail development "was in all relevant respects the functional equivalent of an employee" for purposes of applying the attorney-client privilege. In re Bieter Co., 16 F.3d at 938. In

12

reaching its conclusion, the court found it significant that the consultant was involved "on a daily basis" with the company's principals, the company "was formed with a single objective and [the consultant was] intimately involved in the attempt to achieve that objective[,]" and the consultant's "involvement in the subject of the litigation [made] him precisely the sort of person with whom a lawyer would wish to confer confidentially in order to understand [the company's] reasons for seeking representation." Id. Additionally, the court noted that the consultant was hired to work out of the company's offices, was paid a monthly fee and expenses by the company, appeared at public meetings as the sole representative of the company, and was viewed by others, including the defendants in the lawsuit, as a representative of the company. See id. at 933-36.

The facts of this case do not present an analogous situation. Here, the Exclusive Right to Lease Contract between the Trust and Cushman & Wakefield indicates that Ms. Ou was retained in order to fulfill a particular purpose – to procure a tenant for the Premises – rather than to provide services necessary to the general business operations of the Trust. (See Def. Ex. B). Furthermore, there is no evidence to suggest that Ms. Ou was treated as an employee of the Trust rather than an employee of Cushman & Wakefield, or that anyone viewed her as the Trust's employee. In fact, as noted above, the Trust specifically acknowledged that Ms. Ou could represent potential tenants as well as the Trust with respect to the leasing of the Premises. (See id. ¶ 8). Therefore, Ms. Ou did not hold herself out to the public, and the Trust did not view her, as one of the defendant's employees. Unlike Bieter, where the court found that "[t]here [was] no

13

principled basis to distinguish [the consultant's] role from that of an employee," the facts of this case show that Ms. Ou's relationship to the Trust was equivalent to that of a third-party real estate broker rather than that of an employee. See Bieter, 16 F.3d at 938. Therefore, the Trust has not shown that her status as its leasing agent supports application of the attorney-client privilege.

### C. Application of the Derivative Attorney-Client Privilege

The Trust argues that even if the disclosure of information to unrelated third-parties generally destroys the attorney-client privilege, the communications which were shared with Ms. Ou are entitled to protection because "Ms. Ou's involvement [in its legal matters] was necessary in order for Attorney Hammer to provide legal advice to the Trust." (Def. Opp. Mem. at 5). However, the mere fact that "an attorney's ability to represent a client is improved, even substantially, by the assistance of [a third party]" is insufficient for the attorney-client privilege to apply. Comm'r of Revenue, 453 Mass. at 307, 901 N.E.2d at 1197. As detailed herein, the Trust's claim of privilege must fail as it has not established that Ms. Ou's presence was "necessary for the effective consultation between client and attorney[.]" Id. (internal citation and quotation omitted).

It is undisputed that there are exceptions to the general rule that disclosures to a third party waives the attorney-client privilege. See id. at 306, 901 N.E.2d at 1196. One such exception, on which the Trust is relying, was articulated by the Second Circuit in United States v. Kovel, 296 F.2d 918 (2d Cir. 1961), and is "known as the *Kovel* doctrine or the derivative attorney-client privilege[.]" Id. at 306, 901 N.E.2d at 1196-97. It

recognizes "that the privilege can shield communications of a third party employed to facilitate communication between the attorney and client and thereby assist the attorney in rendering legal advice to the client."[6] Id. at 306, 901 N.E.2d at 1196. However, this court finds, for the reasons that follow, that the derivative attorney-client privilege is not applicable to the facts of this case.

The circumstances under which the derivative attorney-client privilege attaches are limited. As an initial matter, the third party must be "employed to assist a lawyer in rendering legal advice." Cavallaro v. United States, 284 F.3d 236, 247 (1st Cir. 2002). In addition, in order for the privilege to apply, the third party's presence must be "'necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit.'" Comm'r of Revenue, 453 Mass. at 306, 901 N.E.2d at 1196 (quoting United States v. Kovel, 296 F.2d 918, 922 (2d Cir. 1961)). See also Hanover Ins. Co. v. Rapo & Jepsen Ins. Servs., Inc., 449 Mass. 609, 616, 870 N.E.2d 1105, 1111 (2007) (attorney-client privilege protects "statements made to or shared with necessary agents of the attorney or the client, including experts consulted for the purpose of facilitating the rendition of [legal] advice"). Significantly, this "'necessity' element means more than just useful and convenient. The involvement of the third party must be nearly indispensable or serve some specialized purpose in

---

[6] Massachusetts case law applying the derivative attorney-client privilege is consistent with federal case law applying Kovel, including the First Circuit's opinion in Cavallaro v. United States, 284 F.3d 236 (1st Cir. 2002). See Comm'r of Revenue, 453 Mass at 307-08, 901 N.E.2d at 1197-98.

15

facilitating the attorney-client communications. Mere convenience is not sufficient." Cavallaro, 284 F.3d at 249 (internal citation omitted).

In the instant case, Ms. Ou was not hired to assist counsel in rendering legal advice — she was hired to rent the Premises. In addition, while Attorney Hammer asserts that Ms. Ou provided him with information which he used in providing legal advice to the Trust, communications from a third-party "that constitute independent information and expertise for the attorney to use in representing his or her client are not protected by the attorney-client privilege." Comm'r of Revenue, 453 Mass. at 308, 901 N.E.2d at 1198 (quotation and citation omitted). It is only where the third party "facilitate[s] communications" between the attorney and his or her client, that disclosure to the third party does not waive the privilege. Id. at 310, 901 N.E.2d at 1199. Thus, "the exception applies only to communications in which the third party plays an interpretive role. In other words, the third party's communication must serve to translate information between the client and the attorney." Dahl v. Bain Capital Partners, 714 F. Supp. 2d 225, 228 (D. Mass. 2010), and cases cited. In the instant case, Ms. Ou was a source of information for Attorney Hammer, but she was not necessary to help Attorney Hammer or the Trust understand each other Where, as here, the attorney and the client "could communicate competently on their own[,]" disclosure to the third party waives the privilege. Comm'r of Revenue, 453 Mass. at 310, 901 N.E.2d at 1199 (internal quotation and citation omitted). See also Cavallaro, 284 F.3d at 248-49 (finding that privilege did not apply where "evidence [was] strong that [third party] acted to provide accounting advice rather

16

than assist [counsel] in providing legal advice").

The documents also show that many of the attorney-client communications which were shared with Ms. Ou concerned the Bank's need to obtain federal regulatory approvals. The fact that Ms. Ou did not assist the Trust with regard to this issue, and had no specialized knowledge of such matters, further undermines any suggestion that her involvement was necessary in clarifying or facilitating communications between Attorney Hammer and the Trust.

Finally, the waiver does not apply where the third party's communication was designed to provide business advice rather than to assist counsel in providing legal advice. Dahl, 714 F. Supp. 2d at 228, and cases cited. The record demonstrates that the Trust appointed Cushman & Wakefield to provide real estate brokerage services, not legal services. To the extent Ms. Ou also provided assistance to Attorney Hammer, the evidence shows that he relied on her for factual information relating to the execution of the Lease, and that any input she provided was "more within the realm of business advice rather than legal advice." Dahl, 714 F. Supp. 2d at 229 (ruling that communications did not fall within exception to third-party waiver rule where third-party's role was to provide business advice). See also Cavallaro, 284 F.3d at 247 (no privilege applies where "what is sought is not legal advice but only accounting service") (internal quotations omitted)). Therefore, the derivative privilege exception to the waiver rule does not apply in this case, and the Bank is entitled to take discovery regarding communications between Ms. Ou and the defendant.

17

## IV. CONCLUSION

For all the reasons detailed herein, "Plaintiff Banco do Brasil's Motion to Compel Production of Documents Shared with Third Party and for Related Discovery" (Docket No. 75) is ALLOWED. By **April 19, 2012**, the Trust shall produce all of the documents identified on its privilege log that include Ms. Ou, except for the documents that have been withheld as attorney work product. Within **14 days** from its receipt of the documents, the Bank shall take the deposition and document discovery of Ms. Ou and Cushman & Wakefield pursuant to the previously served subpoenas.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge