**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

```
BANCO DO BRASIL, S.A.          . CIVIL NO. 09-cv-11343-NMG
      Plaintiff                .
                               .
          V.                   . BOSTON, MASSACHUSETTS
                               . JUNE 1, 2012
275 WASHINGTON STREET TRUST    .
      Defendant                .
. . . . . . . . . . . . . . . .
```

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE JUDITH G. DEIN
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the plaintiff          Charles G. Berry, Esq.
& counter plaintiff        Arnold & Porter LLP
                           399 Park Avenue
                           New York, NY  10022-4690
                           212-715-1000
                           charles.berry@aporter.com


For the defendant:         Paul E. White, Esq.
& counter defendant        Sugarman, Rogers, Barshak &
                           Cohen, P.C.
                           101 Merrimac Street, 9th Floor
                           Boston, MA  02114-4737
                           617-227-3030
                           benson@srbc.com

Court Reporter:

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

*Judy Bond Gonsalves*
**Certified Court Transcriber**
**Fairhaven, MA  02719**
**(508)  984-7003**

1 COURT CALLED INTO SESSION

2 (3:28:54 p.m.)

3          THE CLERK:  You may be seated.  The United States

4 District Court for the District of Massachusetts is now in

5 session on June 1, the year 2012, in the matter of <u>Banco</u>

6 <u>versus 275 Washington</u>, Civil Action No. 2009-11343.

7          Could counsel please identify themselves for the

8 record?

9          MR. BERRY:  Charles Berry -- Arnold and Porter --

10 admitted *pro hac* for the plaintiff Banco do Brasil.

11          MR. WHITE:  Good afternoon, Your Honor.  Paul

12 White -- Sugarman, Rogers -- for the defendant and plaintiff

13 in counterclaim, Your Honor, 275 Washington Street.

14          THE COURT:  So I have the plaintiff's motion to

15 quash the subpoena.

16          Is the only grounds timeliness?

17          MR. BERRY:  No, Your Honor.  It's both timeliness

18 and --

19          THE COURT:  And relevance.

20          MR. BERRY:  -- lack of relevance.

21          This report was prepared some months -- it was

22 commissioned after the lease was terminated by the bank.

23 The relevant area of inquiry on the issue of whether the

24 bank exercised good faith in its pursuant of regulatory

25 approval necessarily focuses on the one year during which it

*Judy Bond Gonsalves*
Certified Court Transcriber
(508)  984-7003

1 had the opportunity -- after the end of which it had the

2 opportunity to terminate the lease, but lack of timeliness

3 is also an important ground here.

4          THE COURT:  All right.  I'll hear you.  Go ahead.

5 I just --

6          I do need to say that having gone through all the

7 various discovery orders, it appears to me that it's after

8 the time of 56(f) discovery but within the time for general

9 discovery, so that's how I'm reading the orders.

10          Do you want to convince me otherwise?

11          MR. BERRY:  Well, Your Honor, as I understand it,

12 56(f) discovery was clearly set to terminate October 14, and

13 Your Honor's report and recommendation said that 56(f) fact

14 discovery could go forward.  At the end of that the Court is

15 to entertain any dispositive motions.

16          The bank has -- pursuant to the Court's order and

17 the scheduling by Judge Gorton -- filed its motion for

18 summary judgment, its renewed motion.

19          In fact, today is the day that the response to

20 that motion is to be filed, and we have two weeks to reply,

21 and it's our intention to --

22          THE COURT:  And I have fourteen minutes to issue a

23 report and recommendation.

24          MR. BERRY:  Well, Judge Gorton has fixed a rather

25 tight trial schedule.  We had mutually requested that that

1  be extended in order to permit expert discovery, but the

2  only discovery that is permissible after a determination of

3  the summary judgment motion -- or in this case we may have

4  to do it even before there's a decision on that motion -- is

5  expert discovery.  There's no other kind of discovery here

6  other than the 56(f) fact discovery.

7          And when the Court in its original scheduling

8  order referred to any remaining discovery, it was referring

9  to expert discovery.  The McKinsey report which is at issue

10 here is not expert discovery.  If it were referred to by one

11 of -- by the bank's experts, I suppose then it might be fair

12 game, but that's not -- that's not the case.

13         The landlord here has known about the McKinsey

14 report since at least the time of the deposition of the

15 bank's representative, Milton Rodriguez, which was taken on

16 October 6, 2011, eight days before the discovery deadline.

17 They made no request for that report.  They asked a couple

18 of questions of Mr. Rodriguez about what that report was,

19 they determined that it was rendered several months after

20 the lease termination on the one year anniversary of the

21 lease, and they make no request of it until early May.

22         THE COURT:  How long of a report is it?

23         MR. BERRY:  My understanding is that it's a couple

24 of hundred pages long.  I don't know exactly, but it was

25 commissioned, as indicated, after the lease termination.

1      And it's really an eleventh-hour fishing

2 expedition to ask for a document that they've known about

3 for more than seven months, could easily have asked for it

4 previously.

5      They've known that we objected to producing

6 documents after the termination of the lease.  We made that

7 plain in December 2010.  They made no objection to that time

8 frame for discovery, and we proceeded with enormous

9 discovery based on that time frame.

10      THE COURT:  Can you make a representation that the

11 document does not contain any information about the steps

12 that were taken prior to the termination of the lease?

13      MR. BERRY:  I don't think I can make that

14 representation.  I'm not thoroughly familiar with the

15 document, but I can state what's on the record which is Mr.

16 Rodriguez's testimony about it which frankly confirms the

17 bank's good-faith pursuit -- continued good-faith pursuit of

18 regulatory approval.

19      He explained that McKinsey was asked to evaluate

20 and make recommendations with respect to how can we revise

21 our business plan to continue pursuing the prospect of

22 establishing a *de novo* FSB -- that is, one that was created

23 from the outset as opposed to acquisition of another bank,

24 and if the current environment did not allow for our

25 establishing a *de novo* FSB, what is the best exit strategy.

1 This is all after the lease is terminated.

2 And, you know, from his own testimony one of the

3 tasks that McKinsey was asked to undertake was to ask them

4 how they can salvage and maintain their plan to get

5 regulatory approval for a *de novo* FSB, and the request asks

6 not only for the report but also for documents about what

7 the bank did or didn't do in response to any recommendations

8 that might have been in the report.

9 That is not the issue here. The issue is whether

10 the bank exercised good faith during the one year from the

11 lease signing on August 2008 to the date that it had the

12 right to terminate the lease if regulatory approval had not

13 been obtained which was August 2009.

14 That period, which I think is plain to everybody,

15 was of absolute financial turmoil and chaos and resulted in

16 great regulatory difficulty; and indeed, the bank was not

17 able to get the regulatory approval within that one-year

18 time frame, and it terminated the lease.

19 Beyond that, it's not fair or reasonable for the

20 landlord to inquire, particularly when they've known about

21 this for seven months and didn't make any request, nor have

22 they explained in their papers why they've waited this long

23 to make that request. It's clearly a last-minute,

24 eleventh-hour effort that they should not be permitted to

25 do.

1          One of the cases that we cited in the opposing

2    motion papers that were filed yesterday on their cross

3    motion is this Court's decision in <u>Apex Corporation against</u>

4    <u>Cabot Corporation</u>.  This was a decision by Judge Stearns

5    that approved a report and recommendation by Magistrate

6    Judge Bowler, and it spoke about the impropriety of untimely

7    discovery and said in particular -- and this is at page 79

8    of 252 F.R.D. -- that the 1993 amendments to Rule 37(c)(1)

9    gave teeth to a significantly broadened duty to comply with

10   case management orders.

11         I would respectfully submit that this is an

12   instance where the landlord should be compelled to comply

13   with the case management orders and not permitted to conduct

14   fact discovery at such a late date.

15         Thank you, Your Honor.

16         THE COURT:  Counsel?

17         MR. WHITE:  Yes, thank you, Your Honor.  I think

18   it would be helpful to just very briefly go over the Court's

19   orders and explain why it is our position that this is not

20   untimely at all.

21         So we begin, Your Honor, with your order which was

22   entered by and endorsed by Judge Gorton which set out a

23   phasing of the discovery in this case, and that order was

24   dated March 7, 2011, the order of Judge Gorton; and it

25   remained the order subject to some extensions of it.

1          But the concept behind that order remained in

2 place until the most recent order of Judge Gorton in April

3 of this year which frankly rather turned everything on its

4 head.  But the concept that was always behind these orders

5 was that following your ruling on the bank's first motion

6 for summary judgment that there would be a period of

7 discovery on the issue of good faith and fair dealing to

8 culminate in another opportunity for the bank to renew its

9 motion for summary judgment limited to that single issue

10 with discovery to be limited to that single issue.

11          And the language that Your Honor used, I believe,

12 in your order was that 56(f) discovery; meaning, as I

13 understood it when I inherited this case, that there was

14 that period in which that discovery -- that limited

15 discovery could take place, and the Trust could not -- would

16 not be permitted to object if such a motion was filed in

17 accordance with those time frames that it had not had an

18 opportunity to conduct that discovery.  That's the purpose

19 of that rule.

20          THE COURT:  But these documents that you're

21 requesting, why are they different than 56(f) discovery

22 here?

23          MR. WHITE:  Well, Your Honor, we took the

24 deposition of what --

25          It is any remaining discovery, Your Honor; so I

think probably the best answer to that question is to just
quickly go back to your order which said -- endorsed by
Judge Gorton -- which said after there is a ruling on that,
any remaining discoverage which would exclude discovery on
those issues in fact -- at least that's the way that I read
it -- any discovery that is remaining including discovery
that is brought up by deposition sort of taking place there
can then proceed in whatever limited time frame is going to
be left.

But there is no mention in any of those orders
that that discovery was limited to expert discovery or, in
fact, limited in any other way other than by the phrase "any
remaining discovery."

So we took the deposition of -- I believe it was
Mr. Rodriguez who is one of the bank's individual witnesses
and one of the 30(b)(6) witnesses. I think his deposition
was ultimately taken six or seven days before the close of
discovery, and many things were revealed in it, and this was
one of them.

We did not need -- I did not feel like we needed
nor have we sought to in any way derail the summary judgment
process by saying that's 56(f) discovery and we need that.
We wouldn't be able to do that under your -- the Court's
order, but we would certainly be entitled both in terms of
the order and under usual discovery protocol to continue to

1 conduct discovery up to whenever there is a final discovery

2 cutoff.

3        And what has now happened, Your Honor, is that

4 Judge Gorton has issued his new order which essentially

5 abandons -- by setting a trial date on August 6 essentially

6 abandons the approach that he had initially taken that I

7 believe was your approach, which was that there be would a

8 phasing, would be a decision on the motion for summary

9 judgment, there would then be a period of further discovery,

10 there would then be a trial date.

11        So what we have been given is simply a date for

12 motions in limine, a trial date, and the only way that any

13 remaining discovery can take place is if it takes place

14 promptly now.

15        We send out --

16        And to just give Your Honor a little background

17 here, because there's some statements in my brother's brief

18 about all of the discovery that's been done and that this is

19 verging on harassment.

20        Your Honor, we've taken three depositions in this

21 case.  There were discovery requests that have been

22 responded to.  I don't think there's been any significant

23 motion practice concerning discovery by the Trust.  My

24 brother filed a motion on the privilege issue that Your

25 Honor ruled on, but really this is a case that given its

1 size has proceeded very expeditiously and reasonably as far

2 as the depositions that have been taken.  I've taken, I

3 believe, three depositions.

4        And this is the only remaining discovery that we

5 have sought following those.  And we sought it initially

6 from my brother, and he said he would not provide it from

7 the bank's files, and so we filed a subpoena -- served a

8 subpoena on McKinsey.

9        We would have gotten these documents from McKinsey

10 weeks ago if my brother had not filed this motion.  And it

11 would not have imposed any burden at all on the bank, so

12 there is nothing that is undue or harassing or inappropriate

13 here.

14        Then we turn very briefly, Your Honor, if I may,

15 to why these documents are significant, and my brother did

16 not misstate anything in the time frame that he gave you,

17 but I think it's important to recall what the dates actually

18 are under the lease.

19        The dates were that the bank had from August 29,

20 2008 which was the date that the lease was signed until

21 August 29, 2009 to obtain regulatory approval.  And that was

22 described and defined in the lease, and Your Honor will see

23 this when you receive our opposition to their motion for

24 summary judgment which is going to be filed electronically

25 this afternoon.  (I am assured that it will be.)  They had

1 one year to do that.

2          And the regulatory approval that they're required

3 to get was from one agency.  Not three agencies; only one:

4 The Office of Thrift Supervision, the OTS, specifically

5 spelled out in the lease.  And what happened was when they

6 got -- they felt a lukewarm response from the FDIC, another

7 agency to one of their requests, they decided to withdraw --

8 literally withdraw all of their applications including their

9 application to the OTS.  And they did that in April of 2009,

10 almost five months before the deadline with the result that

11 there was no possibility --

12          And Attorney Scott, the regulatory lawyer for the

13 bank admitted this at her deposition.  It made it impossible

14 for the bank to ever comply; and frankly, Your Honor, it

15 also made it impossible for any of us and for the Court to

16 ever know that approval would have been granted, because

17 they withdrew the application.

18          Now, the time frame is important here.  The

19 application was withdrawn in April, and I believe it was not

20 until July that the Trust was met with and told that -- that

21 they were seeking -- that the bank was seeking to terminate

22 the lease.  That's still one month before that date, and it

23 was that date that my brother gave the Court was the date

24 that they say proceeded when the McKinsey Company was

25 commissioned to do its report.  But that commissioning of

1 McKinsey still happened before the August 29 date, and so

2 the time frame is actually that McKinsey -- that the bank

3 contemplated that they were going to get a report from

4 McKinsey on -- not just on setting up the *de novo* bank or

5 doing something else which is -- which is acquiring another

6 bank.

7　　　　　And we say that what really happened here was that

8 back in April their internal documents -- that are attached

9 to our summary judgment papers, back in April the bank

10 started abandoning its desire and plan to form a *de novo*

11 bank and instead to acquire another bank.

12　　　　　And they were perfectly entitled to do that, Your

13 Honor, under their own business planning.  What they weren't

14 entitled to do was to do that if it meant that they were

15 abandoning their obligation to pursue approvals to set up a

16 *de novo* bank.

17　　　　　The reason why he wanted this report and why I

18 believe it may be so relevant, the reason why your question

19 to Attorney Berry was so appropriate:  Can he represent that

20 it doesn't say anything on this subject.  The reason is that

21 while it may -- the report itself may postdate that date.

22 The issue is what was the frame of mind and the state of

23 mind of the bank in this period leading up to August 29, and

24 the issue is was it pursuing and still pursuing and still

25 planning during that period to seek regulatory approval as

1 it was required to under the lease.

2      And we believe that given how consultants work and

3 how reports like this are commissioned and operate, that

4 there would have been communications between the McKinsey

5 Company and the bank in which they would have told McKinsey

6 historically what they had done and why they had done it and

7 whether or not they were, indeed, still pursuing a *de novo*

8 application or whether or not they had abandoned it.

9      And that's why we want that report, and that's why

10 we want the internal communications about that report, and

11 that's why we want any communications between McKinsey and

12 the bank.

13      And we've limited it to just those things, Your

14 Honor.  They're highly relevant.  We don't know what they

15 say, and my brother cannot represent to the Court that they

16 do not deal with exactly those subjects.

17      So for those reasons, Your Honor, it's limited

18 discovery, it's very relevant discovery, and it clearly

19 falls within what the procedural orders were that were

20 contemplated by the Court.

21      We need it to be ready for trial on August 6, Your

22 Honor.

23      Thank you.

24      THE COURT:  Let me just ask, he's indicated that

25 you knew about the report in October, and why did it take

1 seven months to request it, or --  right?

2          MR. BERRY:  Yes, absolutely.

3          THE COURT:  I don't know that it's relevant.  I

4 just have a question.

5          MR. WHITE:  Yes.  There were many things, Your

6 Honor, that have had to be done in this case, and that was

7 certainly one of them, but it was --

8          We all planned to do things, Your Honor, based

9 upon deadlines that we have.  I understood that there was no

10 deadline that was set for any remaining discovery, and that

11 I was fully entitled to proceed to seek that discovery at a

12 later time, and that's what I've done.  I never understood

13 that I had let a deadline go by or that I was acting in a

14 dilatory way and, Your Honor, I don't believe that my client

15 should be penalized for the fact that I chose to do --

16          THE COURT:  No, I just wanted to know if there was

17 --

18          MR. WHITE:  No, no.  That was the reason.

19          THE COURT:  Okay.  Yes.

20          MR. BERRY:  If I may just briefly, Your Honor?

21          I don't think that my colleague has answered the

22 Court's question of why this is different from Rule 56(f)

23 discovery.  It is not.  He's claiming that this is relevant,

24 factual information on the issue that was the subject of the

25 summary judgment motion, and the deadline has passed for

1 that.

2        THE COURT:  All right.  But --

3        MR. BERRY:  It passed seven months ago.

4        THE COURT:  -- since we are -- because you have

5 such short deadlines, it seems to me that the documents

6 can't be used in response to the summary judgment motion,

7 and I assume they will not be since you're filing whatever

8 love package you're filing for me this afternoon.

9        All right.  But let's say you lose the summary

10 judgment by -- there's disputed facts.  When he goes to

11 trial, I don't see anything in this order that precludes him

12 from getting additional discovery to support his factual

13 positions, whatever they may be --

14        MR. BERRY:  Your Honor, respectfully, the

15 discovery process is such that you complete discovery in

16 accordance with the Court's deadlines on fact discovery, and

17 you don't conduct it at the very eve of trial, and we have

18 been operating under that assumption.

19        He hasn't explained to any reasonable degree why

20 he would wait seven months after hearing about this report

21 that he now says is so urgently important to request it.

22        THE COURT:  Well, all right.  I understand the

23 argument, but I find that the request was made in a timely

24 manner, at a time, reading the scheduling, that discovery

25 was still appropriate.

1         As far as it being irrelevant, I think the fact of

2   the date of the document doesn't make it irrelevant.  It

3   seems to me to the extent that it reflects the knowledge and

4   intent of the company during the relevant time period until

5   the end of August -- I guess until August 29, '09 -- either

6   what was done or what was contemplated up until that date,

7   it's relevant.

8         Now, I'll give you an option.  You can review it

9   and redact if you think it's appropriate; or he can produce

10  it to the Court, and we'll do it.  But I don't think the

11  fact that the document is dated after the date of the lease

12  termination makes it an irrelevant document.

13        MR. BERRY:  Well, Your Honor, the other aspect of

14  this is that his request is for a lot more than just the

15  report itself.  He's asked for all the communications

16  between them.

17        I happen to know that the retention letter, for

18  example, is in Portuguese.  And, you know, that letter,

19  contrary to what Mr. White said, was not entered into until

20  September.  There was not an engagement of McKinsey or a

21  termination --

22        THE COURT:  McKinsey's report, is it in

23  Portuguese?

24        MR. BERRY:  I honestly can't remember.  I believe

25  that it's at least translated, but it may be that it is in

1 both languages.  I'm not sure.

2         It's an extensive report, and it was worked on by

3 professionals in Brazil as well as the United States, I

4 believe.  I think they were mostly in Brazil, but I'm not

5 certain of that.

6         But we have gone through enormous discovery.  The

7 fact that they took three depositions is not the burdensome

8 part of it.

9         We produced over a hundred thousand pages of

10 documents, many of them were in Portuguese.  It was

11 inordinately expensive and difficult to retrieve those and

12 review them by Portuguese speakers and produce them.

13         We produced a privileged log that was sixteen

14 thousand documents.  Not pages:  documents.

15         And I don't know what lawyers may have looked at

16 this report or commented on it or been involved in

17 communications, but what he is suggesting is an enormously

18 burdensome effort when I don't think it's fair and

19 appropriate to do that.

20         THE COURT:  Now, it seems to me that it is

21 appropriate to limit it to the report itself.  I mean, to

22 the extent that there was other communications with a third

23 party, that's -- you've taken -- you've had discovery from

24 all of the key witnesses it seems to me from the bank, and

25 that could have --

1           MR. BERRY:  They've had the opportunity of that

2  discovery.

3           THE COURT:  They had the opportunity.

4           MR. BERRY:  Yes.

5           THE COURT:  I think I need to limit it at this

6  moment to the report itself.

7           What, Counsel?

8           MR. WHITE:  May I be heard just very briefly on

9  that, Your Honor?

10           THE COURT:  Yeah.

11           MR. WHITE:  And I don't want to -- I don't want to

12  beat a dead horse at all, but McKinsey has not raised any of

13  these objections, so we're seeking these documents from

14  McKinsey.  They are ready to produce these documents subject

15  to the Court's order.  This is not going to impose the

16  burden on the bank --

17           THE COURT:  I'm sorry.  I did miss that, so it is

18  a finite world in other words.

19           MR. WHITE:  Yes.  And we understand that they have

20  these documents.  They've not told us that they have the --

21           And they've not pressed those limits either.  So

22  while there is a separate cross motion for documents that we

23  were seeking from the bank, but if they don't want to

24  produce those and McKinsey has all of the documents, then

25  they can come from McKinsey, and we don't need to impose any

1 burden on Mr. Berry at all, so.

2          THE COURT:  Well, I understand that they can come

3 from McKinsey, so I will actually withdraw my limitations on

4 the scope.

5          But I do think it's appropriate in this case to

6 have counsel have the opportunity to review them before --

7          I mean, McKinsey can put them together, but I

8 think McKinsey should produce them to the bank, and then let

9 the bank make an assessment as to whether -- as to the

10 relevancy.

11          And if you are withholding it on the grounds of

12 relevancy; you know, you need to redact and produce whatever

13 you think is appropriate.

14          MR. BERRY:  Yes, Your Honor.

15          If I may just -- we have been in contact, as has

16 Mr. White, with outside counsel for McKinsey, and their

17 position is not quite what Mr. White represented.  They do

18 have objections to the scope and burden of the production

19 that is requested of them, and there was a statement in the

20 opposing brief which they specifically took issue with and

21 advised me that they took issue with that.

22          THE COURT:  Well, if they're going to file a

23 protective order --

24          Let's do it this way.  They need to produce the

25 report to you.  Or I assume you have the report, frankly.

1          MR. BERRY:  The report itself we certainly have,

2 yes.

3          THE COURT:  You have that.  And you need to

4 produce that within a week.  All right?  And if you need to

5 redact it, you can redact it.

6          McKinsey can have a week to file a motion for a

7 protective order if it wants to do so on the grounds of

8 overburden and too broad, and we'll deal with it that way.

9          MR. WHITE:  Thank you, Your Honor.

10          THE COURT:  We will have it resolved before August

11 6th if the Court is still going to trial.

12          MR. BERRY:  Thank you, Your Honor.

13          THE COURT:  All right?

14          MR. BERRY:  May I just inquire with respect to the

15 motion for summary judgment, we do --

16          THE COURT:  Why -- yeah.

17          MR. BERRY:  -- intend to reply within the two

18 weeks provided for by the rules.  We had asked for oral

19 argument on that.  And I just wondered if the Court was

20 prepared to entertain oral argument, or whether it would be

21 useful to set a date for that.

22          THE COURT:  I think that is a good idea, so I

23 think we should schedule a hearing now.

24          MR. WHITE:  And Your Honor, as we do that, let me

25 explain something that you will see when we --

1          We have not cross moved, Your Honor.  What we have

2    done is for the very reasons I described this afternoon.  We

3    are requesting that the Court enter judgment in favor of the

4    Trust as it is entitled to under Rule 56 on any motion for

5    summary judgment because of the withdrawal of that

6    application.  So there are in effect -- though we have not

7    cross moved -- they are competing arguments for summary

8    judgment.

9          THE COURT:  All right.  So the schedule is two

10   weeks from today is when your reply brief is due.

11         MR. BERRY:  Yes.

12         THE COURT:  All right.  Which brings us to when?

13   To June --

14         MR. BERRY:  That's the fifteenth of June.

15         THE COURT:  All right.  Let's set up argument --

16         What's July 29 look like?

17         MR. BERRY:  July 29 is a Sunday.

18         THE COURT:  Oh, I'm sorry.  I meant June 29.

19         MR. BERRY:  That's a Friday.

20         THE CLERK:  It's wide open.

21         THE COURT:  Huh?

22         THE CLERK:  It's wide open.

23         THE COURT:  Are you guys around June 29 when we do

24   the -- we'll schedule the argument for then at --

25         MR. WHITE:  Your Honor, I'm out of town, I

1 believe, until the Thursday.

2       THE COURT: Until the following Thursday?

3       MR. WHITE: No, until the day before.

4       THE COURT: Oh, okay, so let's --

5       MR. WHITE: And I'm just wondering if it's

6 possible to do it perhaps on the following week.

7       THE COURT: Are you going to be around the July 4

8 week?

9       MR. WHITE: I am around that week.

10       THE COURT: I am.

11       MR. BERRY: I can make myself available.

12       THE COURT: So how about July 2 or 3?

13       MR. BERRY: Oh, I think that the second is the

14 Fourth of July holiday, or is it not?

15       THE COURT: We're off on Wednesday. We're just

16 off on the fourth.

17       MR. BERRY: Oh, just on Wednesday, uh-huh.

18       THE COURT: Because it's the middle of the week.

19 Right, Tom? We don't have any extra days, I don't think.

20       Do you want to do it Tuesday? You tell me. I

21 mean, it's --

22       MR. WHITE: Your Honor, can I suggest would it be

23 possible for Attorney Berry and I to consult our calendars

24 --

25       I'm just a little concerned about that week, what

1 I may have committed to that I don't have access to right

2 here.

3          -- and contact the Court on Monday?

4          THE COURT:  Yes.  Yes.  But I need some time to

5 get this decision out.

6          MR. BERRY:  Yes, Your Honor.

7          THE COURT:  Okay.

8          MR. WHITE:  So I'm talking about whether or not I

9 can make myself available on that Friday is really what I'm

10 -- which I think would be what the Court's preference is.

11          THE COURT:  For the 29th?

12          MR. WHITE:  Yes.

13          THE COURT:  I think -- yes.  Okay.  If you could,

14 that, I think, would be best.

15          MR. WHITE:  I'll see if I can do that, and that

16 may involve me in moving the thing that I already have

17 that's taking me out of town.

18          THE COURT:  But actually either then, or if you

19 want to -- if you want to be heard the week before then, I

20 can do it then, too.

21          MR. WHITE:  Okay.

22          MR. BERRY:  The 22nd.

23          THE COURT:  Do you think the 22nd?  I'm not here

24 the 22nd, but I'm here the 21st.  I can do the 21st.  You

25 know, I won't be as prepared, but I will be as prepared as I

1 can be.

2          So do you want to do it the 21st then?  Everybody

3 going to be here then?

4          MR. WHITE:  I'm not, Your Honor.

5          THE COURT:  Huh?

6          MR. WHITE:  I'm actually going back to England for

7 that period, and I'm coming back right at that time, so --

8          THE COURT:  All right.  You consult your calendar.

9          MR. WHITE:  Can I do that, Your Honor?

10          THE COURT:  Yes.  All right.  I would like it

11 heard before July 6.

12          MR. WHITE:  Understood.

13          THE COURT:  Okay?

14          MR. BERRY:  I would just say that there have been

15 some comments about the substance of the summary judgment

16 motion which I obviously take great issue with, but I don't

17 think it's appropriate to argue that motion now.

18          THE COURT:  I'm sure I'll see the objection in the

19 reply --

20          MR. BERRY:  There's plenty of response to those

21 comments.

22          THE COURT:  But I think as long as it --

23          That's a procedural question, and I can deal with

24 that.  I'm going to have -- I think what he's telling me is

25 I have the same issue to decide, and if I --

1           MR. BERRY:  Yes.

2           THE COURT:  If I decide that there are no disputed

3  facts but he's entitled to judgment as a matter of law, he's

4  asking me to enter it for him, which I do believe I can do.

5  But I don't --

6           MR. BERRY:  I didn't mean that one procedural

7  issue.  I meant some of his comments about withdrawal of

8  applications and all of those things.  There's a lot of

9  facts to bring to the floor, and I will refrain from getting

10 into it.

11          THE COURT:  All right, then.  I will -- please

12 call Mr. Quinn the beginning of the week, so I have some

13 sense of what the schedule's going to be.

14          MR. BERRY:  We'll plan to call on Monday.

15          THE COURT:  Okay.

16          MR. WHITE:  Thank you, Your Honor.

17          THE COURT:  Then we're all set on this one then?

18 Thank you.

19          MR. BERRY:  Thank you, Your Honor.

20          THE CLERK:  Court is in recess.

21     (Court adjourned at 4:02 p.m.)

22

23

24

25

1          CERTIFICATION

2     I, Judy Bond Gonsalves, court approved transcriber,

3 certify that the foregoing is a correct transcript from the

4 official digital sound recording of the proceedings in the

5 above-entitled matter.

6

7

8                                    June 6, 2012

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Judy Bond Gonsalves*
**Certified Court Transcriber**
**(508)  984-7003**