**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **BANCO DO BRASIL, S.A.,**<br><br>      **Plaintiff,**<br><br>      **v.**<br><br>**275 WASHINGTON STREET CORP.,**<br>**as it is Trustee of WASHINGTON**<br>**STREET REALTY TRUST II,**<br><br>      **Defendant.** | **Civil Action No. 1:09-cv-11343-NMG** |

**BANCO DO BRASIL, S.A.'S CONSOLIDATED MOTIONS *IN LIMINE* REGARDING
THE ADMISSIBILITY OF CERTAIN EVIDENCE AT TRIAL**

Plaintiff Banco do Brasil, S.A. (the "Bank") respectfully moves, *in limine*, pursuant to

Rules 201 and 801 of the Federal Rules of Evidence, for the entry of an Order:  (i) admitting at

trial evidence relating to, documents referring to, questions about and mention of statements

made by federal bank regulators at Office of Thrift Supervision ("OTS"), Federal Deposit

Insurance Corporation ("FDIC") or Federal Reserve Board ("FRB") to the Bank and its counsel

concerning the Bank's applications to those regulators; and (ii) taking judicial notice of the

following:  (a) between August 2008 and August 2009, the FDIC approved only two applications

for federal deposit insurance ("FDI"), and each of those transactions involved the establishment

of a bank in connection with the resolution of a failed financial institution, not a *de novo* federal

savings bank ("FSB"); (b) between August 2008 and August 2009, the FDIC approved only two

applications for FDI, both of which were tied to the acquisition of a failed or failing financial

institution; and (c) certain facts reported in the press and elsewhere concerning the financial

crisis that prevailed during the period in which the Bank sought regulatory approval.

IN SUPPORT OF THIS MOTION, the Bank states as follows:

**Background Facts**

1.      The primary issue in this case is whether the Bank fulfilled its obligation of good faith and fair dealing in pursuing regulatory approval for a *de novo* FSB that the Bank planned to own and operate with a branch to be located at premises leased from Defendant 275 Washington Street Trust II, as it is Trustee of Washington Street Realty Trust II (the "Landlord").  (*See* Report and Recommendation on Banco do Brasil's Renewed Motion for Summary Judgment dated July 10, 2012 ("Report and Recommendation") at 1 (Dkt. No. 130).)

2.      The parties entered into a lease dated as of August 29, 2008 (the "Lease") for ground-floor retail space in a building at 227-275 Washington Street in downtown Boston owned by Defendant.  (*See id.* at 3.)

3.      In order to operate a *de novo* FSB, the Bank required regulatory approval from three federal bank regulators:  the OTS, the FDIC and the FRB.  (*Id.* at 4.)  "[T]he details of each agency's requirements are very complicated."  (*Id.* at 1 n.1.)

4.      The parties agreed, and the Lease provided in Section 6.5, that either party could terminate the Lease if the necessary regulatory approvals had not been obtained within one year from the execution of the Lease, namely, by August 29, 2009.  (*Id.* at 3-4.)

5.      In September 2007, the Bank filed an application with the FRB to be treated as a Financial Holding Company ("FHC") (*id.* at 7), and sought a determination that the bank was subject to comprehensive supervision on a consolidated basis ("CCS") by the bank regulatory authorities in its home country of Brazil.  (*See id.* at 6.)

6.      On March 10, 2008, the Bank filed two applications, one with the OTS and one with the FDIC, to obtain regulatory approval for a *de novo* FSB.  (*Id.* at 7.)  On March 20, 2008,

the Bank filed an application with the FRB, pursuant to Section 4(c)(8) of the Bank Holding Company Act, for permission as a foreign bank to own the FSB.  (*See id.* at 5, 7.)

7.    After these four applications were filed, the regulatory climate became dramatically less receptive as a result of the financial crisis in the U.S. economy in the summer and fall of 2008.  (*See id.* at 8 n.5.)

8.    On April 2, 2009, the FDIC returned the Bank's application for federal deposit insurance and:  (a) indicated that it did not would not entertain a new application unless and until the FRB acted on the pending CCS determination; and (b) "strongly encourage[d] [the Bank] to consider whether an additional FDI submission is feasible in the current environment."  (*Id.* at 9-12.)

9.    On April 30, 2009, having been encouraged by the OTS to withdraw its pending application with the OTS, which had been filed on March 10, 2008, had been suspended since December 22, 2008, and had never been deemed complete, the Bank withdrew its application.  (*See id.* at 9-10.)

10.    The Bank was unable to obtain the required regulatory approvals by the August 29, 2009 lease termination date and, as a result, terminated the lease.  (*See id.* at 7.)

11.    The Landlord claims the Bank failed to exercise good faith in pursuit of the necessary regulatory approvals.  (*See id.* at 1.)

12.    Magistrate Judge Dein, in her Report and Recommendation, found that there were factual issues precluding summary judgment in favor of either the Bank or the Landlord.  (*Id.* at 16-23.)

**Statements Made By the Federal Bank Regulators to
the Bank and Its Counsel Are Admissible.**

13.     Hearsay "means a statement that:  (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801(c).

14.     As the Advisory Committee's Note to Subdivision (c) states, "[i]f the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay."  Fed. R. Evid. 801(c), advisory committee's note; *see also Curreri v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers, Local 251*, 722 F.2d 6, 11 (1st Cir. 1983) ("Statements can be introduced to show the fact that certain things were said even though the same statements could not be introduced to prove the truth of the matter asserted.").

15.     The First Circuit has specifically recognized that "an out-of-court statement might be offered to show that the declarant had certain information, or entertained a specific belief . . . ; or it might be offered to show the effect of the words spoken on the listener (*e.g.*, to supply a motive for the listener's action)."  *United States v. Murphy*, 193 F.3d 1, 6 n.2 (1st Cir. 1999) (citing 5 Weinstein's Federal Evidence § 801.03[4], at 801-14.1 to 801-15 (2d ed.1999)).

16.     The Landlord, in its Opposition to Plaintiff's Motion for Summary Judgment and Request for Entry of Summary Judgment in Favor of Defendant Pursuant to Fed. R. Civ. P. 56(f)(1) ("Def.'s Opp. Mem.") (Dkt. No. 111), claims that "statements made by representatives of federal regulatory agencies during meetings and/or conference calls" with the Bank and Kathleen Scott, its regulatory counsel, are inadmissible hearsay.  (Def.'s Opp. Mem. at 15.)

17.     On the contrary, any statements made by federal bank regulators at the OTS, FDIC or FRB to the Bank and its regulatory counsel concerning the Bank's applications are not

offered for the truth of those statements.  That is, they are not offered to show what the regulators believed or whether the regulators would in fact have made a decision on the Bank's applications by a certain date.

18.     These statements are probative of what the Bank knew and reasonably believed about its prospects for obtaining regulatory approvals, which is at the heart of the question of whether the Bank acted in good faith.  Thus, these statements are presented to show their effect on the Bank and the reasonableness of the Bank's actions taken in light of those statements, regardless of whether those statements were true or not.  When used for these purposes, such statements are not hearsay.  *See United States v. Cruz-Diaz*, 550 F.3d 169, 176 (1st Cir. 2008) (out of court statements offered to show effect on the listener "are not hearsay") (citations omitted).

19.     Accordingly, statements made by the federal bank regulators to the Bank and its regulatory counsel concerning the Bank's applications should not be excluded on hearsay grounds.  *See Vazquez-Valentin v. Santiago-Diaz*, 459 F.3d 144, 150-51 (1st Cir. 2006) (holding that statements offered not for the truth of the matter asserted but "to demonstrate that [a party] had acted in good faith" are not hearsay); *cf. Nolan v. CN8*, 656 F.3d 71, 79 n. 7 (1st Cir. 2011) ("To the extent that the challenged affidavits and exhibits contain statements that would be inadmissible hearsay if offered for their truth, they are nonetheless admissible as evidence of Comcast's knowledge and state of mind at the time of the termination decision.").

**The Court Should Take Judicial Notice That Between August 2008 and August 2009, the FDIC Approved Only Two Applications for FDI, Each of Which Was Tied to the <u>Acquisition of a Failed or Failing Financial Institution.</u>**

20.     The Court may judicially notice "adjudicative facts."  Fed. R. Evid. 201(a). Adjudicative facts, as distinguished from legislative facts, "are simply the facts of the particular case."  Fed. R. Evid. 201(a), advisory committee's note.  In other words, adjudicative facts are

those that "relate to the parties, their activities, their properties, their businesses." *Id.* (citing 2 Administrative Law Treatise 353).

21. The Court may take judicial notice of any adjudicative fact "that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

22. "The court may take judicial notice on its own," and "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(1), (2).

23. Attached as Exhibit A to the accompanying Affidavit of Charles G. Berry in Support of Banco do Brasil, S.A.'s Consolidated Motions *In Limine* Regarding the Admissibility of Certain Evidence At Trial, sworn to July 18, 2012 ("Berry Affidavit" or "Berry Aff."), is a true and correct copy of a listing obtained from the website of the FDIC of "Decisions on Bank Applications" during the period from June 1997 through April 2011. Each listing contains a hyperlink to a corresponding decision made by the FDIC on the listed bank's application for FDI. (Berry Aff. ¶ 3 and Ex. A.)

24. The listing indicates that during the period from August 2008 through August 2009 there were only two decisions by the FDIC granting "applications filed by an existing or proposed depository institution for federal deposit insurance," namely, Bank United, FSB in Coral Gables, Florida and OneWest Bank, FSB in Pasadena, California. (*Id.*)

25. Attached as Exhibit B to the Berry Affidavit is a true and correct copy of the decision of the FDIC granting the application for federal deposit insurance in connection with NewBank, FSB's acquisition of Bank United, FSB.

26. This decision states that "Federal deposit insurance shall not become effective unless the applicant is a successful bidder for, and subsequently acquires certain assets and assumes deposit and certain other liabilities from the FDIC as receiver of Bank United, FSB, Coral Gables, Florida . . . ." (Berry Aff. ¶ 4 and Ex. B at p. 1, ¶ 6.)

27. Attached as Exhibit C to the Berry Affidavit is a true and correct copy of the decision of the FDIC granting the application for federal deposit insurance in connection with OneWest Bank, FSB's acquisition of IndyMac Federal Bank, F.S.B.

28. This decision states that "deposit insurance shall not become effective unless and until the proposed acquisition of certain assets and liabilities of IndyMac Federal Bank, F.S.B., Pasadena, California, is consummated . . . ." (Berry Aff. ¶ 5 and Ex. C at p. 2, ¶ 7.)

29. This Court should take judicial notice of the fact that, between August 2008 and August 2009, the FDIC approved only two applications for FDI, and both approvals were tied to the acquisition of a failed or failing financial institution, as opposed to an application for FDI for a *de novo* FSB.  (Berry Aff. ¶ 3 and Ex. A; Berry Aff. ¶ 4 and Ex. B at p. 1, ¶ 6; Berry Aff. ¶ 5 and Ex. C at p. 2, ¶ 7.)  These facts meet all of the criteria of Rule 201.

30. These facts are probative of the climate in which the Bank sought approval for FDI from the FDIC, the reasonableness of the Bank's efforts to obtain that approval, and the FDIC's ultimate decision to return the Bank's application for FDI.

31. As such, these facts are adjudicative; that is, they "relate to the parties, their activities, their properties, their businesses." *See* Fed. R. Evid. 201(a), advisory committee's note (citing 2 Administrative Law Treatise 353); *see also United States v. Bello*, 194 F.3d 18, 22 (1st Cir. 1999) ("Whether a fact is adjudicative or legislative depends not on the nature of the

fact . . . but rather on the use made of it (*i.e.*, whether it is a fact germane to what happened in the case or a fact useful in formulating common law policy or interpreting a statute) . . . .").

32.     Moreover, the sources of these facts are official government sources obtained through the FDIC's website.

33.     Thus, these facts are not subject to reasonable dispute because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  *See, e.g.*, *Torrens v. Lockheed Martin Serv's Grp., Inc.*, 396 F.3d 468, 473 (1st Cir. 2005) ("We are free ourselves to take judicial notice of the existence of government records."); *United States v. Weber*, 668 F.2d 552, 554 n.4 (1st Cir. 1981) (judicially noticing facts contained in "a standard government publication").

34.     Accordingly, the Bank respectfully requests that the Court take judicial notice of the fact that, between August 2008 through August 2009, the FDIC approved only two applications for FDI, and that both approvals were tied to the acquisition of a failed or failing financial institution, as opposed to an application for FDI for a *de novo* FSB.

**The Court Should Take Judicial Notice that Between August 2008 and August 2009
Only Two Banks Were Established With FSB Charters from the OTS.**

35.     Attached as Exhibit D to the Berry Affidavit is a true and correct copy of a listing obtained from the website of the FDIC showing all 51 banks that were established between August 29, 2008 and August 29, 2009.

36.     Exhibit D demonstrates that only 2 of the 51 banks established between August 29, 2008 and August 29, 2009 were FSBs.

37.     One was OneWest Bank, in Pasadena California, which, as discussed above, acquired IndyMac Federal Bank, F.S.B. as part of a government-assisted transaction.  (Berry Aff. ¶ 6 and Ex. D; *see* Berry Aff ¶ 5 and Ex. C at p. 2, ¶ 7.)

38.     The other was WPS Community Bank, a small community bank in Madison, Wisconsin.  (Berry Aff. ¶ 6 and Ex. D.)

39.     Approval of the OTS, until that agency's sunset in July 2011, was required under the Home Owners Loan Act to establish an FSB.  *See* 12 U.S.C. §§ 1811 *et seq*.  Thus, only two FSBs were established between August 29, 2008 and August 29, 2009 with FSB charters from the OTS.

40.     For the same reasons discussed in paragraphs 31 to 33 above, the Court should take judicial notice of the fact that OneWest Bank and WPS Community Bank were the only two banks established between August 29, 2008 and August 29, 2009 with FSB charters from the OTS.  This fact meets all of the criteria of Rule 201.

41.     This fact is probative of the climate in which the Bank sought FSB approval from the OTS, the reasonableness of the Bank's efforts to obtain that approval, and the reasonableness of the Bank's ultimate decision to withdraw its application to the OTS.

42.     Accordingly, the Bank respectfully requests that the court take judicial notice of the fact that OneWest Bank and WPS Community Bank were the only two banks established between August 29, 2008 and August 29, 2009 with FSB charters from the OTS.  (*See supra* ¶¶ 30-33.)

**The Court Should Take Judicial Notice of the Economic Climate in Which the Bank Sought Regulatory Approval.**

43.     Attached as Exhibit E to the Berry Affidavit is a listing obtained from the website of the FDIC showing the hundreds of bank failures from October 2000 to date.

44.     Attached as Exhibits F to W of the Berry Affidavit are copies of news articles, government press releases and other sources reporting on various well-known aspects of the financial crisis.

45.     In the late summer and fall of 2008, the subprime mortgage crisis struck the United States economy and led to the worst financial recession since the Great Depression.  (*See, e.g.*, Berry Aff. ¶ 8 and Exs. F and G.)

46.     The financial crisis -- now often referred to as the Great Recession -- resulted in at first dozens, and ultimately hundreds of bank failures.  (*See* Berry Aff. ¶ 7 and Ex. E.)

47.     The crisis occurred and intensified during the same period in which the Bank was seeking regulatory approval from the OTS, FDIC and FRB.  (*See* Report and Recommendation at 7-16; Berry Aff. ¶¶ 7-8 and Exs. E-W.)

48.     For the same reasons discussed in paragraphs 31 to 33 above, the Court should take judicial notice of the facts concerning the financial crisis contained in Exhibits E to W to the Berry Affidavit.  These facts meet all of the criteria of Rule 201.

49.     In addition to those reasons, these facts are well known not only within the District of Massachusetts, but indeed, worldwide.  *See* Fed. R. Evid. 201(b)(1).

50.     Moreover, the Court may take judicial notice of generally known facts contained in news reports.  *See Igartua-De La Rosa v. United States*, 417 F.3d 145, 176-77 (1st Cir. 2005) (judicially noticing facts by citation to several Associated Press and New York Times news articles).

51.     The Court may also judicially notice facts concerning economic conditions.  *See Atchison, T. & S.F. Ry. Co. v. United States*, 284 U.S. 248, 260 (1932) (taking judicial notice of changed economic conditions affecting railroads); *Antonio Roig Sucrs. S. En C. v. Sugar Board of Puerto Rico*, 235 F.2d 347, 348 (1st Cir. 1956) (judicially noticing that the economy of Puerto Rico rested in major part on the growing and processing of sugar cane); *accord Mainline Inv.*

*Corp. v. Gaines*, 407 F. Supp. 423, 427 (N.D. Tex. 1976) (taking judicial notice of rising petroleum prices and governmental intervention into oil industry).

52.    These facts concerning the environment of financial crisis in which the Bank sought to obtain regulatory approval from three federal bank regulators bear directly on the reasonableness of its efforts to obtain regulatory approval.

53.    Accordingly, the Bank respectfully requests that the Court take judicial notice of the well-known facts concerning the financial crisis contained in these sources.

WHEREFORE, Plaintiff Banco do Brasil, S.A. respectfully requests that the Court enter an order:  (i) admitting at trial evidence relating to, documents referring to, questions about and mention of statements made by federal bank regulators at the OTS, FDIC and FRB to the Bank and its counsel; and (ii) taking judicial notice of the following:  (a) between August 2008 and August 2009, the FDIC approved only two applications for FDI, and each of those transactions involved the establishment of a bank in connection with the resolution of a failed financial institution, not a *de novo* FSB; (b) between August 2008 and August 2009, the FDIC approved only two applications for FDI, both of which were tied to the acquisition of a failed or failing financial institution; and (c) certain facts reported in the press and elsewhere concerning the financial crisis that prevailed during the period in which the Bank sought regulatory approval.

Dated:  July 18, 2012

Respectfully submitted,

BANCO DO BRASIL, S.A.,
Plaintiff / Counterclaim Defendant,

By its attorneys,


/s/ Eric F. Eisenberg
Eric F. Eisenberg, BBO #544682
eeisenberg@haslaw.com
HINCKLEY, ALLEN & SNYDER, LLP
28 State Street
Boston, Massachusetts 02109
(617) 345-9000


/s/ Charles G. Berry
Charles G. Berry (*Admitted Pro Hac Vice*)
James D. Flynn *(Admitted Pro Hac Vice)*
charles.berry@aporter.com
james.flynn@aporter.com
ARNOLD & PORTER LLP
399 Park Avenue
New York, New York 10022
(212) 715-1169

- 13 -

## CERTIFICATE OF SERVICE

I hereby certify that the above document was filed through the ECF system for electronic service to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants (if any) on July 18, 2012.

/s/ James D. Flynn
James D. Flynn