UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BANCO DO BRASIL, S.A.,<br><br>       Plaintiff<br><br>       v.<br><br>275 WASHINGTON STREET CORP.,<br>as it is the Trustee of the WASHINGTON<br>STREET REALTY TRUST II,<br><br>       Defendant | CIVIL ACTION NO. 09-11343-NMG |

**DEFENDANT'S MOTION IN LIMINE TO PRECLUDE PLAINTIFF
FROM CALLING (1) FORMER EMPLOYEES OF THE OTS AND FDIC
and (2) EXPERT WITNESS PAUL ALLAN SCHOTT TO TESTIFY AT TRIAL**

**INTRODUCTION**

Defendant and Plaintiff-in-Counterclaim, 275 Washington Street Corp, as Trustee

of Washington Street Realty Trust II (the "Trust"), hereby files this motion in limine to

preclude the plaintiff, and defendant-in-counterclaim Banco do Brasil, S.A. (the "Bank")

from calling former employees of the Office of Thrift Supervision ("OTS") and Federal

Deposit Insurance Corporation ("FDIC") as witnesses to testify at trial.  The Trust also

seeks to preclude the Bank from calling expert witness, Paul Allan Schott, to testify at

trial based on the Bank's failure to timely serve an expert report from Mr. Schott.

To the extent the Court allows any of these witnesses to testify at trial, the Trust,

in the alternative, respectfully requests that they be precluded from offering testimony (a)

interpreting the language contained in a letter dated April 2, 2009 from the FDIC to the

Bank and (b) that it was reasonable for the Bank in April 2009, given the economic

climate, to withdraw its application to the OTS and to not re-submit its application to the

FDIC.

## BACKGROUND FACTS

On June 15, 2012, the Bank filed the affidavits of Thomas A. Barnes ("Barnes Aff.") and Sara A. Kelsey ("Kelsey Aff.") in connection with its reply memorandum in support of its renewed motion for summary judgment. (Magistrate Dein has written a lengthy opinion recommending the denial of that motion and the parties' objections to that report are to be filed by July 24, 2012). Copies of the Barnes Aff. and Kelsey Aff. are attached hereto at Exhibits A and B. Mr. Barnes is the former Deputy Director of the OTS (Barnes Aff., ¶ 1) and Ms. Kelsey is a former General Counsel of the FDIC (Kelsey Aff., ¶ 1). The OTS ceased operations in 2011 and was taken over by the Office of the Comptroller of the Currency ("OCC"). Barnes Aff., ¶ 5; Kelsey Aff., ¶ 8, n. 1.

On June 12 and 13, 2012, the Bank served expert reports from Mr. Barnes and Ms. Kelsey, which mirror the content of their affidavits. Copies of these reports are attached hereto at Exhibits C and D. While these reports were served late, the Trust does not seek to preclude testimony by these witnesses on that ground (since it at least had their earlier affidavits) but rather because the regulations of their former agencies specifically prohibit their proposed testimony absent compliance with the administrative regulations of those agencies. On July 13, 2012, the Bank served the expert report of Paul Allan Schott. A copy of this report is attached hereto at Exhibit E. The Trust objects to the testimony of Mr. Schott on grounds that his report was not timely served.

## ARGUMENT

I.   **Because the Bank Failed to Comply with OCC Regulations, Mr. Barnes Should Not Be Allowed to Testify at Trial**

It is well established that before a party may obtain testimony from a former employee of an administrative agency -- because of the concern that such testimony

would improperly disclose information that is protected from disclosure by the deliberative process and/or bank examination privilege -- that party must obtain permission from the applicable agency for the former employee to testify. *See, e.g., Bancorp v. FDIC,* 1999 WL 1332312 at *4. Because Mr. Barnes is a former employee of the OTS, the Bank must comply with OCC Regulations before it is allowed to present testimony from Mr. Barnes at trial. Copies of the relevant OCC Regulations are attached hereto at Exhibit F. Mr. Barnes intends to testify concerning "non-public" OCC information, which includes, among other things, "[t]estimony from . . . a former OTS employee, officer, or agent concerning information acquired by that person in the course of his or her performance of official duties with the OCC or OTS or due to that person's official status at the OCC or OTS." 12 C.F.R. § 4.32 (b)(1)(v).

Under the relevant regulations, the Bank was required to submit a request in writing to the OCC to seek permission for Mr. Barnes to testify at trial. 12 C.F.R. § 4.33. Further, "[e]xcept as authorized by this subpart or otherwise by the OCC, no current or former OCC employee or former OTS employee or agent, may, in any manner, disclose or permit the disclosure of any non-public OCC information to anyone other than an employee or agent of the Comptroller for use in the performance of OCC duties." 12 C.F.R. § 4.37(a)(1). Mr. Barnes was also required to notify the OCC if the Bank requested that he testify at trial. 12 C.F.R. § 4.37(a)(2). On information and belief, the Bank did not comply with these regulations and therefore should not be allowed to call Mr. Barnes as an expert witness. *See, e.g., Bancorp v. FDIC,* 1999 WL 1332312 at *4 (D.N.J. Nov. 10, 1999) (Court quashed subpoena on former employee of OCC because a request was not made to the OCC seeking its permission to take the requested discovery).

3

Further, Mr. Barnes may not testify at trial if testimony could be provided from another source. *See* 12 C.F.R. § 4.32(d). The recently produced expert report from Mr. Schott, a lawyer in private practice, demonstrates conclusively that such testimony is available from alternative sources.

The Bank was also required to notify the Trust of any request for testimony of former employees of the OTS. 12 C.F.R. § 4.39 ("Upon submitting a request to the OCC for the testimony of an OCC employee or former OCC or OTS employee, the requester shall notify all other parties to the case that a request has been submitted."). The Bank did not provide any such notice to the Trust, which hampered the Trust's ability to obtain relevant and essential documents from the OTS to effectively cross examine Mr. Barnes at trial. On July 13, 2012, the Trust sent a letter to the OCC requesting that it confirm that the Bank complied with OCC procedures in connection with the retention of Mr. Barnes as an expert witness. A copy of this letter is attached hereto at Exhibit G. The OCC has not yet responded to this letter or taken a position on whether it will object to Mr. Barnes' testimony.

The Trust also requested that the OCC produce certain documents that the Trust needs to effectively cross-examine Mr. Barnes at trial, including documents (i) concerning applications to the OTS for approval of a charter for a *de novo* savings bank that Mr. Barnes worked on and/or supervised, (ii) concerning the policies and practices of the OTS for approval of *de novo* savings banks and CCS determinations, (iii) concerning determinations that an applicant was subject to comprehensive consolidated supervision in the applicant's home country, and (iv) communications between the OTS and the Bank about Mr. Barnes' expert report and purported testimony. *Id.* Because of the lateness of

4

the Bank's disclosure of Mr. Barnes as an expert witness, however, the Trust may not be able to obtain these documents from the OCC before trial commences, which would severely prejudice the Trust.  Moreover, if the OCC declines to produce these documents, it will further demonstrate the unfairness of letting Mr. Barnes testify about his knowledge as a high level "official" of the OTS without providing the Trust with access to the actual evidence concerning how the OTS handled decisions in other bank applications on which his opinion is purportedly based.

The Trust will be severely prejudiced if Mr. Barnes is allowed to testify at trial concerning matters deemed "non-public" if the Trust is unable, either because of late disclosure or because it is prohibited by agency decision, to have access to any of the underlying documents and facts concerning the official actions of the OTS on which Mr. Barnes' opinions are based.  Accordingly, because the Bank has not complied with OCC Regulations, it should be precluded from calling Mr. Barnes to testify at trial.

**II.      Because the Bank Failed to Comply with FDIC Regulations, Ms. Kelsey Should Not be Allowed to Testify at Trial**

The same considerations apply to the proposed testimony of Ms. Kelsey.  As noted above, it is well established that before a party may obtain testimony from a former employee of an administrative agency -- because of the concern that such testimony would improperly disclose information that is protected from disclosure by the deliberative process and/or bank examination privilege -- that party must obtain permission from the applicable agency for the former employee to testify.  *See, e.g., Bancorp v. FDIC,* 1999 WL 1332312 at *4 (D.N.J. Nov. 10, 1999) (Court quashed subpoena on former employee of OCC because a request was not made to the OCC seeking its permission to take the requested discovery).  Because Ms. Kelsey is a former

employee of the FDIC, the Bank must comply with FDIC Regulations before it is allowed to present testimony from Ms. Kelsey at trial.  Copies of the relevant FDIC Regulations are attached hereto at Exhibit H.  Because the Bank failed to comply with these regulations, it should be precluded from calling Ms. Kelsey as a witness at trial. There is no dispute that the Bank's counsel is aware of these regulations.  *See* letter dated December 16, 2010 from Kathleen Scott, attorney for the Bank, to Steven Rogers, Acting Deputy General Counsel at FDIC requesting that the FDIC to provide its permission to disclose certain exempt information during discovery.  A copy of this letter was attached to the Bank's renewed motion for summary judgment and is attached hereto at Exhibit I.

Ms. Kelsey was general counsel at the FDIC from 2007 to 2008, a period that in all likelihood overlapped with the lease entered into between the Bank and the Trust.[1] Ms. Kelsey intends to testify concerning information contained in FDIC documents that is prohibited from disclosure.  *See* 12 C.F.R. § 309.2(a)(c)(e).  In order to testify concerning "exempt information," the Bank must obtain permission from the FDIC.  *See* 12 C.F.R. § 309.6 ("[except as provided in paragraph (b) of this section . . . no person shall disclose or permit the disclosure of any exempt records, or information contained therein, to any persons other than those officers, directors, employees, or agents of the Corporation who have a need for such records in the performance of their official duties.").  Exempt information includes testimony concerning "records that are contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of the FDIC or any agency responsible for the regulation or supervision of financial institutions."  12 C.F.R. § 309.5(g)(8).  For example, Ms. Kelsey intends to

---

[1] Ms. Kelsey's expert report does not provide sufficient information to make this determination with certainty.

testify that (a) applications to the OTS and FDIC in connection with establishing a de novo federal savings bank were commonly submitted jointly, (b) personnel of the OTS and FDIC commonly communicated with one another concerning such related applications and often participated in joint meetings with the applicant, (c) the formal return by the FDIC of an application is a very strong negative message from the FDIC about the application, (d) the closing of banks was a primary concern of the FDIC, (e) in her experience, if the FDIC used the phrase "strong encouragement," that meant that an application should not resubmit an application until the current economic climate improved, (f) it was common practice for the FDIC to encourage applicants to withdraw their applications if it appeared that the application would not be acted on favorably and (g) "during [her] tenure at the FDIC, [she is] aware that the FDIC returned, or encouraged numerous applicants to withdraw, applications for federal deposit insurance (FDI) because of the FDIC's increased conservatism stemming from the difficult and uncertain economic climate.  [She is] also aware that in 2008 and 2009 the FDIC often simply did not come to a decision on deposit insurance applications."  Exhibit D at ¶¶ 13, 14, 26, 27, 30, 31, 33.

Based on Ms. Kelsey's affidavit and expert report, it is clear that her testimony necessarily implicates the decision-making process of the FDIC and advice she provided as General Counsel of the FDIC concerning the application of FDIC regulations, policies and practices -- testimony which would fall within the deliberative process privilege, the bank examination privilege and the attorney-client privilege if asserted by the FDIC.  As a result, the Trust sent a letter to the FDIC on July 13, 2012 to make it aware of these issues.  A copy of this letter is attached hereto at Exhibit J.  The Trust has not received a

response from the FDIC concerning whether it plans to waive any applicable privileges that may arise at trial in connection with Ms. Kelsey's testimony. The Trust also requested that the FDIC produce certain documents that the Trust needs to effectively cross-examine Ms. Kelsey at trial. *Id.* Because of the lateness of the Bank's disclosure of Ms. Kelsey as an expert witness, the Trust may not be able to obtain these documents before trial commences, which would severely prejudice the Trust at trial.

In order for Ms. Kelsey to testify at trial, the General Counsel of the FDIC must authorize her to testify about exempt information. *See* 12 C.F.R. § 309.6(b)(8)(ii) ("General Counsel, or designee, may in his or her discretion and for good cause, disclose or authorize disclosure of any exempt record or testimony by a current or former officer, director, employee, agent of the Corporation, or third party, sought in connection with any civil or criminal hearing . . . if he or she determines that the records or testimony are relevant to the hearing . . ."). On information and belief, the Bank has not received permission from the FDIC for Ms. Kelsey to testify at trial in this matter. The Trust will be severely prejudiced if Ms. Kelsey is allowed to testify at trial without following the administrative procedures established by the FDIC and offers testimony concerning certain matters but refuses to disclose information that she contends is prohibited from disclosure by FDIC Regulations. For this very reason, the Trust's recent letter to the FDIC asked the FDIC to inform whether it will waive the deliberative-process, bank examination and attorney-client privileges in connection with Ms. Kelsey's purported testimony. Assuming, as expected, that the FDIC declines to waive these privileges, it will be fundamentally unfair to permit Ms. Kelsey to testify to broad opinions derived from her tenure as an official at the FDIC when the Trust is unable to question her

8

regarding the basis for that opinion, including specific decisions made by the FDIC and advice she provided while at the FDIC.

Accordingly, because the Bank has not complied with FDIC Regulations and because the Trust will be prejudiced by the existence of the deliberative process privilege, bank examination privilege and attorney-client privilege (all of which will limit the ability of the Trust to effectively cross-examine Ms. Kelsey at trial), the Bank should be precluded from calling Ms. Kelsey to testify at trial.  *See, e.g., Bancorp v. FDIC,* 1999 WL 1332312.

**III.    Because the Bank Failed to Timely Serve an Expert Report from Paul Alan Schott, the Bank Should be Precluded from Calling him to Testify as an Expert Witness at Trial**

Because the Bank failed to serve Mr. Schott's expert report in compliance with Fed. R. Civ. P. 26(b)(2) and did not serve it until after 5:00 p.m. on July 13, 2012 -- on the eve of the date for filing motions *in limine* -- it should be precluded from calling Mr. Schott as an expert witness to testify at trial.  *See Santiago-Diaz v. Laboratorio Clinico Y De Referencia Del Este,* 456 F.3d 272, 277-78 (1st Cir. 2006) ("district court did not abuse its discretion in ruling that plaintiff's failures to timely disclose the identity of her expert and to furnish a proper expert witness report were both substantially unjustified and harmful").  The Bank has had ample opportunity to retain and divulge experts.  It is unfair and prejudicial to require the Trust to be confronted with late-disclosed testimony by yet a third expert.  Mr. Schott should be excluded from testifying at trial under these circumstances.

**IV.    In the Alternative, the Bank Should Be Precluded from Offering Expert Testimony (i) Interpreting the Language Contained in a Letter dated April 2, 2009 from the FDIC to the Bank (ii) that it was reasonable for the Bank, in April 2009, to withdraw its application for federal regulatory approval given the economic climate**

A central issue in this case is whether it was reasonable for the Bank to withdraw its application to the Office of Thrift Supervision after receipt of a letter, dated April 2, 2009, that the Bank received from the FDIC.  A copy of this letter is attached hereto at Exhibit K.  Based on the Bank's expert reports, the Bank apparently plans to elicit expert testimony interpreting the language contained in this letter and whether the Bank's interpretation of that letter was reasonable.  This testimony should be precluded.

As an example, Ms. Kelsey's expert report contains an entire section with the heading, "The Strong Negative Message Conveyed by the FDIC's April 2, 2009 Letter" expressing her opinions concerning the language contained in the letter, including that "[t]he Bank and its regulatory counsel reasonably understood the letter to convey that [strong negative] message."  Exhibit D at ¶¶ 16-28.  While the Bank can offer testimony from its own witnesses concerning how they interpreted the letter after its receipt, and the Trust should be able to cross-examine those witnesses, it is not proper for experts to themselves interpret the language contained in that letter and what the Bank "reasonably understood the letter to convey."  This is rank speculation, not expert testimony.

The Court, without testimony from outside experts, should make its own determination, based on actual testimony from Bank witnesses, of how the Bank interpreted the letter and whether that interpretation of the FDIC letter was reasonable. Accordingly, expert testimony concerning the language contained in the FDIC's April 2, 2009 letter and whether the Bank's interpretation of that letter was reasonable should be precluded.

The Bank's experts also opine that it was "reasonable" for the Bank, in April 2009, not to re-submit its application to the FDIC and to withdraw its application to OTS until the regulatory climate improved, i.e. after the deadline set in the Lease for obtaining regulatory approval.  Exhibit D (Kelsey Report) at ¶¶ 25, 28, 38; Exhibit C (Barnes Report) at ¶¶ 12, 13, Exhibit E (Schott Report) at ¶¶ 31-32.  However, it is well settled law that in determining whether a party acted "reasonably" in attempting to meet a contractual pre-condition, it is necessary to compare the relevant conduct to the actual promises in the contract, not some extra-contractual objectives of the party.  *See Ayash v. Dana-Farber Cancer Institute,* 443 Mass. 367, 385 (2005) ("The concept of good faith and fair dealing in any one context is shaped by the nature of the contractual relationship from which the implied covenant derives."); *see also Carma Developers v. Marathon Dev. Cal., Inc.,* 826 P.2d 710, 727 (Ca. 1992) (implied covenant of good faith is read into contracts in order to protect the express covenants or promises of the contract, not to protect an interest not directly tied to the contract's purpose).

Here, given the context of the Bank's contractual obligation to try to obtain regulatory approval *within one year* (i.e. by August 29, 2009) to operate a federal savings bank at the leased premises, the contentions of the recently-disclosed experts that it was "reasonable" for the Bank -- in assessing its own business interests -- to withdraw or not re-submit its applications are entitled to no weight since they simply answer the wrong question.  Whether it was reasonable from a private interest standpoint for the Bank to withdraw its applications in April 2009 so it might be able to resubmit them *after* the lease deadline when the regulatory climate improved has no bearing on the question of whether the Bank made a good faith effort to meet its contractual obligation to try to

obtain regulatory approval by that deadline.

Accordingly, the Bank should be precluded from presenting expert testimony that, given the economic climate, it was reasonable for the Bank, in April 2009, to withdraw its application to the OTS and not resubmit its application to the FDIC.

**CONCLUSION**

For the foregoing reasons, the Trust respectfully requests that the Bank be precluded from calling former employees of the Office of Thrift Supervision ("OTS") and Federal Deposit Insurance Corporation ("FDIC"), including Thomas Barnes and Sara Kelsey, as witnesses to testify at trial.  The Trust also requests that Paul Alan Schott be precluded from testifying at trial.

To the extent that any of these experts are allowed to testify at trial, the Trust respectfully requests that they be precluded from offering testimony (a) interpreting the language contained in a letter dated April 2, 2009 from the FDIC, including whether the Bank's interpretation of that letter was reasonable and (b) that, given the economic climate, it was reasonable for the Bank, in April 2009, to withdraw its application to the OTS and to not re-submit its application to the FDIC.  .

Respectfully submitted,

275 WASHINGTON STREET CORP., as it
is the Trustee of the WASHINGTON STREET
REALTY TRUST II,

By its attorneys,


/s/ William F. Benson
Paul E. White (BBO #549584)
white@srbc.com
William F. Benson (BBO #646808)
benson@srbc.com
Sugarman, Rogers, Barshak & Cohen, P.C.
101 Merrimac Street
Boston, MA  02114
Tel:  (617) 227-3030

Dated:  July 18, 2012


## CERTIFICATE OF SERVICE

I, William F. Benson, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on July 18, 2012.

/s/ William F. Benson
William F. Benson


444753

13