UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BANCO DO BRASIL, S.A.,

     Plaintiff

     v.

275 WASHINGTON STREET CORP.,
as it is the Trustee of the WASHINGTON
STREET REALTY TRUST II,

     Defendant

CIVIL ACTION NO. 09-11343-NMG

**DEFENDANT'S MOTION IN LIMINE TO PRECLUDE PLAINTIFF FROM
PRESENTING EVIDENCE THAT REGULATORY APPROVAL
COULD NOT HAVE BEEN OBTAINED BY AUGUST 29, 2009**

Defendant and Plaintiff-in-Counterclaim, 275 Washington Street Corp, as Trustee

of Washington Street Realty Trust II (the "Trust"), hereby files this motion in limine to

preclude the plaintiff, and defendant-in-counterclaim Banco do Brasil, S.A. (the "Bank")

from presenting evidence and/or arguing that a condition precedent in the lease was not

met where its own actions brought about the failure of that condition.

**INTRODUCTION**

The central issue to be decided at trial is whether the Bank breached the implied

covenant of good faith and fair dealing contained in the parties' lease by failing to use

reasonable efforts to obtain the required regulatory approval – approval by the Office of

Thrift Supervision ("OTS") within one year of the signing of the lease – for operating a

de novo federal savings bank at the leased location.  In April 2009, halfway through this

one year period, the Bank *withdrew* its application to the OTS thereby making it

impossible for this condition to be satisfied.  Because (a) the Bank's 30(b)(6) witness

testified that the Bank's withdrawal of its application to the OTS in April 2009 made it

impossible to obtain the required regulatory approval by August 29, 2009 and (b) it is well established that where a party is charged with obtaining the approval of a third party as a condition precedent to a contract but then fails to seek that approval or withdraws its request for such approval, it may not assert the failure of the condition as a ground for avoiding the contract, the Bank should be precluded from presenting evidence and/or arguing at trial that it could not have obtained regulatory approval from the OTS by August 29, 2009.

## **BACKGROUND FACTS**

### I.      **The Lease and Regulatory Approval from the OTS**

In a Lease dated August 29, 2008, the Trust leased to the Bank certain premises located on the first floor of 227-275 Washington Street for use as a high quality, full service retail branch banking facility.  A copy of the Lease is attached to the Bank's Verified Complaint at Exhibit A.  Because the Bank was a foreign bank and was not yet licensed to conduct its desired federal savings bank activities in this country, the parties negotiated special provisions describing the "Regulatory Approval" the Bank represented it needed before opening a branch for business.  Specifically, Section 3.2 of the Lease describes this Regulatory Approval as approval "from the U.S. Treasury Office of Thrift Supervision for Tenant or its direct or indirect subsidiary, Banco do Brasil, FSB, to operate a branch bank in the demised premises as a federal savings bank."  The Lease also provides for an early termination of the Lease by either party in certain specified circumstances if this Regulatory Approval was not granted.  Specifically, Section 6.5 of the Lease provides, in relevant part:

> If Regulatory Approval has not been obtained within one (1) year from the
> date of this lease, then, subject to the following enumerated conditions,

> Landlord and Tenant each shall have the right to elect to terminate this lease by notice given to the other within sixty (60) days after the end of such one-year period and prior to obtaining Regulatory Approval.

Thus, the Bank needed to obtain regulatory approval from the Office of Thrift Supervision ("OTS") by August 29, 2009.

## II.      The Bank's Application to the OTS

In March 2008 (prior to the execution of the Lease), the Bank submitted two separate but related applications to the OTS, an application under 12 U.S.C. § 1464 for approval to form a de novo federal savings bank as an indirect wholly-owned subsidiary of the Bank ("FSB Application") and an application under 12 U.S.C. § 1467a for the Bank to become a savings and loan holding company by acquiring the FSB (the "SLHC Application").  In connection with the consideration of the SLHC Application, the Home Owners' Loan Act and regulations of the OTS required the OTS to make a determination that the Bank was subject to comprehensive supervision on a consolidated basis in its home country ("CCS determination").  Importantly, the OTS was specifically authorized to make this determination and was not required to wait for the Federal Reserve Board, or any other federal agency.  Indeed, the OTS was not even permitted to delegate this determination to the FRB or any other federal agency.  To make this CCS determination, the OTS had to determine that (a) Brazil's bank regulatory system provided for comprehensive supervision on a consolidated basis and (b) the bank seeking savings and loan holding company status (here, Banco do Brasil) was subject to that comprehensive consolidated supervision..

During the time period March 10, 2008 to March 19, 2009, the Bank provided information that was requested by the OTS to process its applications.  On March 19,

2009, the Bank submitted additional information to the OTS and requested that it process the Bank's application.  By its regulations, the OTS had to respond to an application within 60 days after receiving a complete application from the Bank.  The OTS never provided a response to the Bank in connection with its March 19, 2009 letter because the Bank decided to abandon its efforts to obtain regulatory approval before that response was due.

**III.    In April 2009, the Bank Withdrew Its Applications to the OTS and Makes No Further Efforts to Obtain the Required Regulatory Approval**

On April 6, 2009, the Bank received a letter from the FDIC, dated April 2, 2009, setting forth its concerns with the application for federal deposit insurance as it stood at that time.  The Bank admits that it could have addressed the concerns expressed by the FDIC in its April 2, 2009 letter in approximately 3 months yet, after receiving this letter, the Bank (1) never discussed the content of the letter with anybody at the FDIC, (2) never asked the FDIC how the Bank could provide a revised application that would be favorably received by the FDIC, and (3) never asked the FDIC whether a revised application would be acted on favorably if the Bank submitted a revised application.  See Deposition of Kathleen Scott ("Scott Dep."), at 144 (attached hereto at Exhibit 1).  Further, even after the OTS provided specific advice to the Bank in early April 2009 on what steps it should take to secure regulatory approval from the FDIC for the proposed banking operation -- namely seeking a meeting with the top decision makers at the FDIC -- the Bank ignored that advice and did not request such a meeting to discuss its application.  Scott Dep. at 145-148.

At about the same time that the Bank decided not to submit a revised application to the FDIC after receipt of the FDIC's April 2, 2009 letter, the Bank also decided to

withdraw its application to the OTS entirely and then made no further efforts to obtain the required regulatory approval from the OTS before the one-year anniversary of the execution of the lease.  A copy of the Bank's letter to the OTS withdrawing its application is attached hereto at <u>Exhibit 2</u>.  These deliberate and quite voluntary actions made it impossible for the Bank to comply with its obligation under the Lease – namely to obtain regulatory approval from the OTS by August 29, 2009.  The Bank has conceded that by withdrawing its application to the OTS, it had no chance to obtain the required approval from the OTS by August 29, 2009.  *Id*.  Specifically, Kathleen Scott, the Bank's 30(b)(6) representative, testified as follows:

> Q:      If the date to open a federal savings bank at the Boston location of the leased premises was the end of August of 2009, if the bank was withdrawing its application to the OTS to give its approval to operate such a federal savings bank, is it fair to say that upon that withdrawal there was not going to be any chance that it be able to open such a bank at that location in that time frame?  (Objection by counsel)
>
> A:      Yes.

Scott Dep. at 155.  The Bank also concedes that it made no further efforts to pursue the required regulatory approval from the OTS after it withdrew its applications in April 2009.  Scott Dep., pp. 156-157.

<b><u>ARGUMENT</u></b>

**I.      The Bank Was Required to Submit the Necessary Applications to Obtain Regulatory Approval from the OTS**

This Court has already determined that the Lease contained a condition precedent to its performance – namely that if regulatory approval was not obtained by the Bank from the OTS by August 29, 2009, both parties would be entitled to terminate the Lease. As the law of this case, this Court has already found that when such a provision is

contained in a contract, the covenant of good faith and fair dealing imposes on the party subject to the condition precedent "an obligation to make the necessary applications in a reasonable effort to obtain the required approval." *Trans Canada Power Mkt. Ltd. v. Narrangansett Elec. Co.,* 542 F. Supp. 2d 127, 135 (D. Mass. 2008); *see also Stabile v. McCarthy,* 336 Mass. 399, 402-03 (1957) (a party must make reasonable efforts to obtain planning board approval); Restatement (Second) of Contracts, § 230(2)(a) (legal duty to perform an obligation is not discharged if the promisor breached the duty of good faith and fair dealing ). *See* Report and Recommendation of Magistrate Judge Dein, dated September 7, 2010 (Docket No. 46), which was approved and adopted by Judge Gorton on September 24, 2010.

II.     **The Bank Should Be Precluded from Presenting Evidence that It Could Not Have Obtained Regulatory Approval from the OTS by August 29, 2009**

Because it withdrew its application to the OTS in April 2009, the Bank should not be allowed to introduce any evidence that it failed to obtain OTS regulatory approval by August 29, 2009 or to argue that such failure excuses it from performing its obligations under the Lease.  It is undisputed that the Bank withdrew its application to the OTS on April 30, 2009, which was five months before the one year period in the Lease to obtain approval from the OTS to operate a federal savings bank.  It is also undisputed that the Bank made no further efforts to obtain regulatory approval from the OTS after April 2009 and that because it withdrew its application to the OTS in April 2009, it was impossible to obtain the required regulatory approval by August 29, 2009.  Magistrate Judge Dein's Report and Recommendation on the Bank's Renewed Motion for Summary Judgment indicated that she agreed with these principles.  *See* Report at 21.

Nonetheless, at trial, the Bank intends to present testimony that it did not obtain

regulatory approval from the OTS by August 29, 2009.  Because the Bank, however, withdrew its application to the OTS in April 2009 thereby making it impossible to obtain the required regulatory approval, the Bank should be precluded from presenting any evidence (including expert testimony) or arguing that it did not obtain regulatory approval from the OTS by August 29, 2009.  Such preclusion is the natural consequence of the rule that a party may not rely on the failure of a condition precedent where such failure is the consequence of that party's non-action.  Here, the Bank is estopped – as a matter of law – from terminating the Lease based on its failure to obtain the required regulatory approval from the OTS and it should not be allowed to present testimony that it would not be able to and did not obtain regulatory approval from the OTS prior to August 29, 2009.  *See In re President Casinos, Inc.,* 419 B.R. 381 (E.D. Mo. 2009) (a party may not rely on a failure of a condition precedent as a basis to terminate a contract when that party withdrew its application before a decision could be made); *Cauff, Lippman & Co. v. Apogee Finance Group, Inc.,* 807 F. Supp. 1007, 1022 (S.D.N.Y. 1992) (a party cannot rely on its failure to perform a condition precedent in the contract to terminate the contract if that "party frustrated or prevented the occurrence of the condition"); *Moore Bros. Co. v. Brown & Root, Inc.,* 207 F.3d 717, 724-26 (4th Cir. 2000) (holding that because promisor's actions contributed to the non-performance of a condition precedent in the contract, the promisor may not assert the condition precedent as a defense); Restatement (Second) of Contracts, § 245, comment a (party required to take affirmative steps to cause the occurrence of a condition specified in a contract and must refrain from taking steps to prevent or hinder the occurrence of the condition).  Massachusetts law is in accord.  *See Northeast Drilling, Inc. v. Inner Space Services,*

*Inc.,* 243 F.3d 25, 40 (1st Cir. 2001) (a party cannot rely on the non-occurrence of a condition when that party's action prevented the non-occurrence); *Lobosco v. Donovan,* 30 Mass. App. Ct. 53, 56 (1991) ("it is fundamental that a promisor may not avoid his promised performance based on the nonoccurrence of a condition, where the promisor has himself hindered or prevented its occurrence"); *In re Access Cardiosystems, Inc.,* 361 B.R. 626, 645 (Bankr. D. Mass. 2007) ("Massachusetts law is clear: a party that prevents the other from satisfying a condition precedent cannot rely on the failure of the condition to avoid its own obligations under a contract."). *See also* Magistrate Judge Dein's Report and Recommendation on the Bank's Renewed Motion for Summary Judgment at 21 (holding that the "this Circuit has recognized the 'prevention doctrine' where a 'contractual condition precedent is deemed excused when a promisor hinders or precludes fulfillment of a condition and that hinderance or preclusion contributes materially to the non occurrence of the condition'"), quoting *Ne. Drilling, Inc. v. Inner Space Servs., Inc.*, 243 F.3d 25, 40 (1st Cir. 2001).

*In re President Casinos, Inc.,* 419 B.R. 381 (E.D. Mo. 2009), is on all fours with the present case. In that action, Columbia Sussex entered into a purchase and sale agreement with President Casinos, Inc. ("PCI") to purchase a casino which "included a condition precedent to the closing of the sale, which required that Columbia Sussex have obtained the necessary gaming license from the Missouri Gaming Commission ("MGC")." *Id.* at 385. Columbia Sussex submitted applications to the MGC and the MGC indicated that certain of those applications were likely to be denied but was willing to receive additional information from Columbia Sussex. *Id.* at 386. The MGC scheduled a hearing to discuss the applications, and two days prior to the hearing,

Columbia Sussex advised MGC that it was withdrawing its applications "because it had determined that future efforts with the MGC to obtain a license would be futile . . ." *Id.* at 386. PCI filed an adversary proceeding against Columbia Sussex for breach of contract and the parties submitted competing motions for summary judgment. *Id.* at 388. Holding that "Columbia Sussex had established that the MGC Commissioners would have denied the license," the bankruptcy court denied PCI's motion for summary judgment and granted Columbia Sussex's motion. *Id.* However on appeal, the U.S. District Court for the Eastern District of Missouri held that "*the plaintiff need only prove that the conduct of the defendant materially contributed to the failure of the condition, and need not establish that the condition would have been satisfied but for the defendant's conduct.*" *Id.* at 390 (emphasis added), citing *Moore Bros. Co. v. Brown & Root, Inc.*, 207 F.3d 717, 725 (4th Cir. 2000). The Court stated:

> Courts in other jurisdictions that have confronted analogous circumstances have concluded that when a party withdraws its application to a board or agency before a final determination can be made on that application, it has acted in a way that hinders the condition precedent requiring approval of that board or agency. *Thus, the defendants in those cases were not permitted to rely on the failure of the condition as a basis to terminate their contracts.*

*Id.* at 390 (emphasis added), citing *Vanadium Corp. of Am. v. Fidelity & Deposit Co. of Md.,* 159 F.2d 105, 108 (2d Cir. 1947), *Holbrook v. Lane,* 1994 WL 287430 at *35 (Tenn. Ct. App. June 30, 1994), and *AquaSource, Inc. v. Wind Dance Farm, Inc.,* 833 N.E.2d 535, 541 (Ind. App. 2005). Accordingly, the Court held that "Columbia Sussex is estopped from relying on the failure to acquire that license as an excuse not to purchase the President Casino, and its failure to do so is a breach of contact." *Id.* at 391. The Court further concluded that the conduct was not merely a breach of contract – Columbia Sussex also breached the obligation of good faith and fair dealing by withdrawing its

application before the MGC. *Id.* at 391-92.

While Magistrate Judge Dein correctly denied the Bank's motion for summary judgment and recognized and accepted the above-mentioned principles in her report and recommendation, she failed to grant summary judgment to the Trust pursuant to Fed. R. Civ. P. 56(f) finding that the federal regulatory scheme in this case is complex and that the Bank took several steps prior to its withdrawal of its application to obtain regulatory approval, which events created a disputed issue of fact. Report and Recommendation at 22. Respectfully, this reasoning ignores and indeed is contrary to the very principle of estoppel that Magistrate Dein accepted. Because the Bank voluntarily decided to withdraw its application to the OTS in April 2009 and took no additional steps to pursue that application, it is estopped – as a matter of law – from terminating the lease based on failure to obtain regulatory approval by August 29, 2009. *See In re President Casinos, Inc.,* 419 B.R. at 390 (a party may not rely on a failure of a condition precedent as a basis to terminate a contract when that party withdrew its application before a decision could be made). It makes no difference to the above analysis that the regulatory scheme is complex or that the Bank took numerous steps to obtain regulatory approval from the OTS *prior* to the April 2009 withdrawal of its application. *See, e.g., Wojtkun v. DeWolfe New England,* 12 Mass. L. Rptr. 149 at *6 (Essex Sup. Ct. July 24, 2000) (summary judgment granted based on the withdrawal of an application before the deadline to obtain approval), which case was cited by Magistrate Judge Dein in her Report at 22.[1]

Here, because Kathleen Scott, the Bank's 30(b)(6) witness, admits that withdrawal of the Bank's application to the OTS in April 2009 made it impossible to

---

[1] While the Trust believes that the Magistrate Judge's decision should be approved in all other respects, pursuant to Fed. R. Civ. P. 72(b), the Trust will be filing objections to this aspect of the Magistrate Judge's Report and Recommendation.

obtain regulatory approval by August 29, 2009, this testimony is binding on the Bank. *See Booker v. Massachusetts Dept. of Public Health,* 246 F.R.D. 387, 389 (D. Mass. 2007) (Rule 30(b)(6) testimony is binding on the corporation).  As a result, as she acknowledged, it is undisputed that the withdrawal "materially contributed" to the failure to obtain the condition identified in the Lease.  By prematurely withdrawing its applications to the OTS so that is impossible to ever know whether the OTS would have timely granted Regulatory Approval, the Bank's actions estop it from asserting that the OTS would not have granted such approval and it cannot now terminate the Lease based on the non-occurrence of that condition.  If the Bank is estopped from terminating the Lease, it follows that it should be precluded from presenting testimony that it could not have obtained regulatory approval from the OTS prior to August 29, 2009.

## CONCLUSION

For the foregoing reasons, the Trust respectfully requests that the Bank be precluded from offering evidence and/or arguing that the Bank could not have obtained and did not obtain regulatory approval from the OTS by August 29, 2009.

Respectfully submitted,

275 WASHINGTON STREET CORP., as it
is the Trustee of the WASHINGTON STREET
REALTY TRUST II,

By its attorneys,


/s/ William F. Benson
Paul E. White (BBO #549584)
white@srbc.com
William F. Benson (BBO #646808)
benson@srbc.com
Sugarman, Rogers, Barshak & Cohen, P.C.
101 Merrimac Street
Boston, MA  02114
Tel:  (617) 227-3030

Dated:  July 18, 2012

## CERTIFICATE OF SERVICE

I, William F. Benson, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on July 18, 2012.

/s/ William F. Benson
William F. Benson


444716

12