UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

BANCO DO BRASIL, S.A.            )
                                 )
    Plaintiff,                   )   Civil Action No. 09-11343-NMG
                                 )
    v.                           )
                                 )
275 WASHINGTON STREET CORP.,     )
as it is Trustee of WASHINGTON   )
STREET REALTY TRUST II,          )
                                 )
    Defendant.                   )
_____ )

**DEFENDANT'S MOTION TO COMPEL PLAINTIFF TO PRODUCE DOCUMENTS THAT WERE PRODUCED BY MCKINSEY & COMPANY, INC. IN RESPONSE TO A RULE 45 SUBPOENA**

Defendant, 275 Washington Street Corp., as Trustee of Washington Street Realty Trust II (the "Trust"), hereby moves to order the plaintiff Banco do Brasil, S.A. (the "Bank") to cease and desist from interfering with the production of documents by non-party McKinsey & Company, Inc. ("McKinsey") in response to a Rule 45 subpoena issued by the Trust. As set forth below in more detail, the Bank improperly withheld documents and redacted other documents produced by McKinsey in response to a Rule 45 subpoena because of its self-serving contention that the documents were irrelevant. Because the Bank has no standing to object to or impede the production of documents subpoenaed from a third party (and willingly produced by the non-party) and because those documents are relevant to the Bank's assertion that it acted in good faith, the Court should issue an order that these documents be produced in their entirety by McKinsey, without interference or improper redaction of any documents by the Bank.

## I. Factual Background

This Court is familiar with the facts of this dispute. In a Lease dated August 29, 2008, the Trust leased to the Bank premises located on the first floor of 227-275 Washington Street for use as a full service retail branch banking facility. Because the Bank was a foreign bank and was not yet licensed to conduct its desired federal savings bank activities in this country, the parties negotiated special provisions describing the "Regulatory Approval" the Bank represented it needed before opening a branch for business. Specifically, Section 3.2 of the Lease describes this Regulatory Approval as approval "from the U.S. Treasury Office of Thrift Supervision for Tenant or its direct or indirect subsidiary, Banco do Brasil, FSB, to operate a branch bank in the demised premises as a federal savings bank." The Lease also provides for an early termination of the Lease by either party in certain specified circumstances if regulatory approval was not granted. Specifically, Section 6.5 of the Lease provides, in relevant part:

> If Regulatory Approval has not been obtained within one (1) year from the date of this lease, then, subject to the following enumerated conditions, Landlord and Tenant each shall have the right to elect to terminate this lease by notice given to the other within sixty (60) days after the end of such one-year period and prior to obtaining Regulatory Approval.

While the Bank had initially filed an application with the Office of Thrift Supervision ("OTS"), it withdrew that application in April 2009 and then made no further efforts to obtain the required regulatory approval before the one-year anniversary of the execution of the lease. The Bank now contends that those efforts were never abandoned and indeed claims that they continued after the one year anniversary but that a prerequisite for regulatory approval – a so-called "CCS determination" – was not granted until several months later. This argument is central to the Bank's defense that it acted in good faith. *See* Bank's Memorandum of Law in Support of its Renewed Motion for Summary Judgment at 8 [Docket No. 99]. The Trust's position is that the Bank's efforts to focus on the CCS determination process is a smokescreen to conceal the fact

that all efforts to obtain the regulatory approval required by the lease had long been abandoned and that the CCS application, at least at the time of the lease termination, was being pursued solely to obtain federal bank holding company status so that the Bank could acquire an existing bank, not to open a *de novo* bank.

**II.      The McKinsey Report**

At the Bank's deposition, its representative testified that in July 2009 -- prior to the one-year period identified in the Lease -- the Bank sought permission from its board of directors to retain an external consultant to evaluate the current economic environment and evaluate the Bank's business plan.  After receiving board approval, the Bank retained McKinsey in September 2009.  McKinsey was tasked with providing its evaluation concerning (1) how the Bank could establish a de novo federal savings bank and (2) whether the Bank should instead acquire an existing federal savings bank.  The Trust sought documents concerning these tasks because the Bank and McKinsey would undoubtedly have communicated concerning the Bank's prior attempts to obtain regulatory approval during the relevant time period (August 2008 to August 2009), the status of those efforts, the reasons why the Bank had withdrawn its applications for regulatory approval, and whether the Bank had decided to abandon those efforts and instead acquire an existing bank during that time period.

**III.     The Subpoena Issued to McKinsey**

On May 7, 2012, because the Bank refused to produce documents related to the McKinsey Report, the Trust served a Rule 45 Keeper of the Records subpoena on McKinsey. The subpoena sought, among other things, a copy of the McKinsey Report and communications between the Bank and McKinsey regarding the report in an effort to discover the true motives of the Bank during the time period August 2008 to August 2009.  On May 17, 2012, the Bank filed

a motion to quash the Rule 45 Subpoena, and a hearing was held on June 1, 2012. At the hearing, the Magistrate Judge advised that she would deny the Bank's motion to quash the subpoena but commented that the Bank could review the documents gathered by McKinsey to assess their relevancy. *See* June 1, 2012 Transcript at 20. A copy of this transcript is attached hereto at <u>Exhibit A</u>. The order issued by the Court, however, only allowed the Bank to redact information from the McKinsey Report that the Bank would produce and *not* the documents that McKinsey would produce pursuant to the subpoena. A copy of the Court's Order denying the Bank's motion to quash is attached hereto at <u>Exhibit B</u>.

After the Court denied the Bank's motion, the Trust and McKinsey reached an agreement in which the Trust agreed to narrow the scope of its subpoena and McKinsey would search for and produce any responsive documents that were responsive to these agreed-upon topics. As narrowed, McKinsey agreed to search for and produce the following categories of documents: (i) McKinsey's working paper file for the McKinsey Report; (ii) documents that the Bank provided to McKinsey at the time of the engagement; and (iii) a limited email search for communications between McKinsey and the Bank concerning the McKinsey Report. Given the need to complete this discovery as soon as possible, McKinsey agreed to produce this narrowed category of documents without further objection, subject to the Bank's insistence that the documents be produced first to the Bank for a relevancy review with the Trust reserving its right to challenge any redactions or withholdings made by the Bank. A copy of this email agreement is attached hereto at <u>Exhibit C</u>. On June 27, 2012, McKinsey served a list of the responsive documents that it had provided to the Bank's counsel. A copy of this list is attached hereto at <u>Exhibit D</u>. McKinsey located and produced a total of 35 documents.

**IV. The Bank Improperly Withheld and/or Redacted Documents Provided by McKinsey**

On July 3, 2012, the Bank released a limited number of the documents produced by McKinsey as responsive to the Trust's narrowed subpoena. A copy of the Bank's cover letter is attached hereto at Exhibit E. However, without any explanation, the Bank withheld in their entirety 19 out of 35 documents produced by McKinsey. Specifically, the Bank withheld (1) an October 29, 2009 Memorandum Regarding the Due Diligence of MBCP USA; (2) a November 11, 2009 U.S. Business Plan Update; (3) a December 2, 2009 U.S Business Plan Update; (4) an Undated McKinsey Team List; (5) an October 21, 2009 Overview of Potential BCP Acquisition; (6) a September 29, 2009 Discussion Document; (7) an August 7, 2009 Proposal Document; (8) a December 15, 2009 Business Plan Follow Ups; (9) a December 2, 2009 Business Plan Update; (10) a December 21, 2009 U.S. Market Entry Business Plan; (11) a December 8, 2009 U.S. Market Entry Regulator Discussion; (12) an Undated Appendix Document; (13) a November 12, 2009 U.S. Market Entry Update; (14) a November 19, 2009 U.S. Business Plan Update; (15) an October 13, 2009 Discussion Document; (16) October 23, 2009 U.S. Regional Banking Opportunity; (17) an October 21, 2009 Overview of Potential BCP Acquisition; (18) an Untitled Strategy Discussion; and (19) a September 2009 Project Vasco Confidential Information Memorandum.

The Bank's contention that the Court permitted it to interfere with McKinsey's production of responsive and relevant documents is misplaced. Most importantly, the Court issued no such order. Moreover, while it was appropriate to permit the Bank to review the documents in advance of their production to determine if any of the documents were privileged, the Bank has no standing to object to a Rule 45 subpoena or to make any redactions to a production made by a third party on grounds other than privilege. *See, e.g., In re Stone &*

*Webster Securities Litigation,* 2006 WL 2818489, *3 (D. Mass. 2006) (holding that, among other things, defendant lacked standing to move to quash third-party subpoena); *Taylor v. Litton,* 1975 WL 166114, *2 (D. Mass. 1975) ("Unless a party to the action can make a claim to some personal right or privilege with respect to the subject matter of such subpoena directed to a nonparty witness, the party to the action has no right to relief under these rules . . ."); *Langford v. Chrysler Motors Corp.,* 513 F.2d 1121, 1126 (2d Cir. 1975) ("In the absence of a claim of privilege a party usually does not have standing to object to a subpoena directed to a non-party witness."); 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2463.1 (3d ed. 2008) ("Numerous cases have held that a party lacks standing to challenge a subpoena absent a showing that the objecting party has a personal right or privilege regarding the subject matter of the subpoena."). Accordingly, all of these documents covered by the subpoena and produced without objection by McKinsey should be produced by the Bank in their entirety without redactions. Based on McKinsey's description of the documents, the Trust believes that these documents – irrespective of whether they are dated after August 2009 -- are likely to shed significant light on the true motives of the Bank during the critical time period of August 2008 to August 2009.

Not only did the Bank withhold more than half of the documents produced by McKinsey, it also withheld numerous pages from the 13 documents that it did produce and made redactions on other pages making it virtually impossible for the Trust to determine the content of those documents.[1] Copies of the documents produced by the Bank are being filed under seal and are attached to the Affidavit of William F. Benson ("Benson Aff."), submitted herewith. For

---

[1] The only three documents that the Bank produced without redactions were two business plans that the Bank had already produced to the Trust during discovery and an August 26, 2009 letter from McKinsey to the Bank.

example, the first document identified on McKinsey's list is entitled "August 7, 2009 Proposal Document" and consists of 185 pages. However, the Bank produced *only* 16 of these pages. See Benson Aff., Exhibit 1. Indeed, for most of the documents produced by the Bank, the Bank unilaterally decided only to produce a few pages of the multi-page document that was produced by McKinsey. Benson Aff. The Bank also made wide scale redactions on certain other pages. *See* Benson Aff., Exhibits 5 and 6. Based just on the limited pages produced by the Bank, it is clear the documents contain highly relevant information that shed light on the Bank's motives to abandon its attempt to obtain regulatory approval and concentrate on acquiring an existing bank. Once again, the Bank lacks standing to assert any objection to the subpoena issued to McKinsey and therefore should not be allowed to withhold or redact pages from documents that were produced by McKinsey in response to a Rule 45 subpoena.

Even if the Bank had standing to object to this production of documents by a third party, its objection on grounds of relevancy is frivolous. Based on the Bank's summary judgment papers, the Bank contends (contrary to the Trust's position and the evidence) that it never abandoned its efforts to seek regulatory approval during the one-year period set forth in the Lease. *See* Bank's Memorandum of Law in Support of its Renewed Motion for Summary Judgment at 8 [Docket No. 99]. Given that the Bank relies on its actions following the termination of the Lease as showing its good faith efforts during this time period, it is spurious for the Bank to say that the Trust should not get access to documents that also post-date the termination date in order to challenge those assertions. Documents that were withheld or redacted by the Bank are highly relevant and probative on this issue because they will shed light on whether the Bank made good faith efforts to obtain regulatory approval during the one-year period identified in the Lease. In sum, there is no basis for the Bank's decision to withhold or

redact responsive documents that were produced by McKinsey in response to a Rule 45 subpoena. They should now be produced in their entirety and without redaction. *See Whittingham v. Amherst College*, 164 F.R.D. 124, 126 (D. Mass. 1995) ("As a general matter, relevancy must be broadly construed at the discovery stage, that is, information is discoverable if there is any possibility it might be relevant to the subject matter of the action."); *Gagne v. Reddy,* 104 F.R.D. 454, 456 (D. Mass. 1984) (to be successful on a motion to compel, defendants must show that the information sought "is relevant to the subject matter involved in the pending action").

WHEREFORE, the Trust respectfully requests that the Court enter an Order compelling the Bank -- within two calendar days of the Court's Order -- to produce all of the documents produced by McKinsey in their entirety and without redaction.

## LOCAL RULE 7.1 CERTIFICATION

Pursuant to Local Rules 7.1(A)(2), undersigned counsel states that he conferred with plaintiff's counsel to resolve or narrow the issues presented in this motion.

>Respectfully submitted,
>
>275 WASHINGTON STREET CORP.,
>as it is Trustee of WASHINGTON
>STREET REALTY TRUST II
>
>By its attorneys,
>
>/s/ William F. Benson
>Paul E. White (BBO #549584)
>white@srbc.com
>William F. Benson (BBO #646808)
>benson@srbc.com
>Sugarman, Rogers, Barshak & Cohen, P.C.
>101 Merrimac Street
>Boston, MA 02114
>Tel: (617) 227-3030

Dated: August 3, 2012

## **CERTIFICATE OF SERVICE**

I hereby certify that the above document was filed through the ECF system for electronic service to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants (if any) on August 3, 2012.

/s/ William F. Benson
William F. Benson